1   DAVID L. ANDERSON (CABN 149604)
    United States Attorney
2   SARA WINSLOW (DCBN 457643)
    Chief, Civil Division
3   EMMET P. ONG (NYBN 4581369)
    Assistant United States Attorney
4

5       1301 Clay Street, Suite 340S
        Oakland, California 94612-5217
6       Telephone: (510) 637-3929
        Facsimile: (510) 637-3724
7       E-mail: emmet.ong@usdoj.gov

8   Attorneys for Defendants
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                SAN FRANCISCO DIVISION

13

14  CALIFORNIA TRIBAL FAMILIES COALITION )   Civil Action No. 3:20-cv-06018-MMC
    *et al.*,                           )
15                                      )
            Plaintiffs,                 )
16                                      )
        v.                              )   **ANSWER TO COMPLAINT FOR**
17                                      )   **DECLARATORY AND INJUNCTIVE**
    ALEX AZAR *et al.*,                 )   **RELIEF**
18                                      )
            Defendants.                 )
19  _____    )

20

21

22

23

24

25

26

27

28  ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
    NO. 3:20-CV-06018-MMC

Defendants[1] hereby responds to the Complaint filed by Plaintiffs[2] as follows:

## I.   INTRODUCTION[3]

1.      Defendants deny that more than 430,000 children are removed from their homes and placed in foster care every year. Defendants aver that ACF's most recent AFCARS data, from FY19, shows that 424,000 were in foster care at the end of FY19. With regard to the remaining allegations in Paragraph 1, Defendants lack knowledge or information sufficient to form a belief about their truth.

2.      Defendants admit that federal law requires HHS to collect "comprehensive national information" on the number of youth in foster care, their demographics and status, and their experiences in care. 42 U.S.C. § 679(c)(3). Defendants admit that this data collection, known as the Adoption and Foster Care Analysis and Reporting System ("AFCARS"), is used to inform policy and direct resources at both the federal and state level. Defendants deny the remaining statements in Paragraph 2.

3.      Defendants admit the allegations in Paragraph 3, except Defendants deny that AFCARS ceased operating under the 1993 regulations in 2016. Because the 2016 Final Rule has not been implemented, agencies continue to report AFCARS data according to the 1993 regulations and will do so until the 2020 Final Rule is implemented on October 1, 2021.

4.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4 without more details about the research to which Plaintiffs are referring.

5.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 5.  ACF avers that it does not have nationwide data on AI/AN LGBTQ+ youth and other LGBTQ+ youth of color.

---

[1] Defendants are Alex Azar, in his official capacity as Secretary of Health and Human Services; Lynn A. Johnson, in her official capacity as Assistant Secretary for the Administration for Children and Families; U.S. Department of Health and Human Services; and Administration for Children and Families.

[2] Plaintiffs are California Tribal Families Coalition, Yurok Tribe, Cherokee Nation, Facing Foster Care in Alaska, Ark of Freedom Alliance, Ruth Ellis Center, and True Colors, Inc.

[3] Defendants have included the headings listed in the Complaint to assist in reading the pleadings and does not admit the accuracy of those headings.

6.      Defendants admit the allegations in Paragraph 6, except that Defendants lack knowledge or information about the "thousands of interviews" that Plaintiffs mention.

7.      Defendants deny the allegations in Paragraph 7 and aver that the stated purpose of these data elements was to assist ACF and IV-E agencies in meeting the needs of LGBTQ and AI/AN youth in foster care, not to assist other organizations.

8.      Defendants deny the statements in Paragraph 8, except that Defendants admit that "Defendants delayed and then, in May 2020, rescinded large portions of the 2016 rule."

9.      Deny.

10.      Defendants admit that ACF eliminated the requirement that child welfare agencies collect reported data on the sexual orientation of youth aged 14 and older, legal guardians, and foster and adoptive parents. Defendants deny the remaining statements in Paragraph 10. Defendants aver that they do not consider data submitted to AFCARS to be "voluntarily reported." If data elements about sexual orientation are included in AFCARS, title IV-E agency caseworkers would be required to question all foster youth age 14 or older, legal guardians, and foster and adoptive parents about their sexual orientation.

11.      Defendants admit the first sentence and deny the rest of the allegations in Paragraph 11.

12.      Defendants admit that "Plaintiffs in this case include two federally recognized Indian tribes, a coalition of 36 tribes based in California, a foster youth and foster care alumni organization, and three organizations." With regard to the remaining allegations in Paragraph 12, Defendants lack knowledge or information sufficient to form a belief about their truth.

13.      Deny.

14.      Deny.

15.      Deny.

## II.      JURISDICTION AND VENUE

16.      Admit.

17.      Admit.

### III.   PARTIES

18.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18.

19.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19, except that Defendants admit that CTFC submitted comments opposing the proposed changes to AFCARS.

20.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20.

21.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21, except that Defendants admit that Yurok is a federally recognized Indian tribe.

22.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22, except that Defendants admit that Yurok Tribe operates under a IV-E agreement with the state of California.  Defendants also admit the description of IV-E in footnote 5.

23.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23, except that Defendants admit that ICWA provides federally recognized tribes with the right to intervene in state child custody proceedings that involve their children.

24.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24, except that Defendants admit that Plaintiff Cherokee Nation is the sovereign government of the Cherokee people.

25.     Defendants admit that Cherokee Nation operates a direct title IV-E plan. With regard to the remainder of the allegations in Paragraph 25, Defendants lack knowledge or information sufficient to form a belief about their truth.

26.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26.

1          27.     Defendants lack knowledge or information sufficient to form a belief about the truth of

2    the allegations in Paragraph 27.

3          28.     Defendants lack knowledge or information sufficient to form a belief about the truth of

4    the allegations in Paragraph 28.

5          29.     Defendants lack knowledge or information sufficient to form a belief about the truth of

6    the allegations in Paragraph 29.

7          30.     Defendants lack knowledge or information sufficient to form a belief about the truth of

8    the allegations in Paragraph 30.

9          31.     Defendants lack knowledge or information sufficient to form a belief about the truth of

10   the allegations in Paragraph 31.

11         32.     Defendants lack knowledge or information sufficient to form a belief about the truth of

12   the allegations in Paragraph 32, except that Defendants admit that youth in the child welfare system are

13   particularly at risk of trafficking.

14         33.     Defendants lack knowledge or information sufficient to form a belief about the truth of

15   the allegations in Paragraph 33.

16         34.     Defendants lack knowledge or information sufficient to form a belief about the truth of

17   the allegations in Paragraph 34.

18         35.     Defendants lack knowledge or information sufficient to form a belief about the truth of

19   the allegations in Paragraph 35.

20         36.     Defendants lack knowledge or information sufficient to form a belief about the truth of

21   the allegations in Paragraph 36.

22         37.     Defendants lack knowledge or information sufficient to form a belief about the truth of

23   the allegations in Paragraph 37.

24         38.     Defendants lack knowledge or information sufficient to form a belief about the truth of

25   the allegations in Paragraph 38.

26

27

28   ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
     NO. 3:20-CV-06018-MMC                           4

39.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39.

40.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40.

41.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41.

42.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42.

43.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43.

44.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44.

45.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 45.

46.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46.

47.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47.

48.     Admit.

49.     Admit.

50.     Admit.

51.     Admit.

## IV.     **FACTUAL ALLEGATIONS**

### A.     **Overview of Federal Child Welfare Programs**

52.     Admit.

53.     Admit.

54.     Admit, except deny that title IV-B, subpart 1 child welfare services is a "principal means through which Congress allocates this money."  Defendants aver that federal child welfare funding is principally under IV-E.

55.     Admit.

56.     Defendants admit these statements to the extent supported by the documents cited, which are the best evidence of their contents; otherwise, deny.

**B.      Overview of  Federal Child Welfare Programs**

57.     Admit.

58.     Admit.

59.     Admit.

60.     Admit.

61.     Admit.

62.     Admit.

63.     Defendants admit the allegations in the first and third sentences of Paragraph 63. Defendants deny the allegations in the second sentence of paragraph 63 and aver that, with regard to the National Data Archive on Child Abuse and Neglect, access to the full AFCARS data set is restricted through an application process that requires applicants, primarily researchers, to demonstrate that they adhere to best practices in ethical and professional standards of human subjects research.

64.     Defendants admit the allegations in Paragraph 64, except deny the allegation that IV-B and IV-E funds are provided "in return for providing" AFCARS data.  Defendants aver that IV-B and IV-E funds are provided to IV-E agencies that meet state plan requirements and submit qualifying expenses, and they may be reduced as a penalty for states that do not meet federal requirements. Currently, states do not receive penalties under IV-E for failure to comply with AFCARS, but once the 2020 Final Rule goes into effect they will receive such penalties for noncompliance.

65.     Defendants admit the allegations in Paragraph 65, except deny that AFCARS ceased operating under the 1993 regulations in 2016.  Because the 2016 Final Rule has not been implemented,

agencies continue to report AFCARS data according to the 1993 regulations and will do so until the 2020 Final Rule is implemented on October 1, 2021.

66.     Defendants admit the allegations in the first sentence of Paragraph 66.  Defendants deny the allegations in the second sentence of Paragraph 66, except admit that in the rulemaking Defendants recognized that AFCARS was intended to serve as a "catalyst" specifically for states to improve their information systems. 58 FR 67,915.

67.     Defendants admit these allegations to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.  Defendants aver that while AFCARS data can provide benefits to diverse stakeholders, it is intended primarily for federal use.

68.     Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

69.     Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

70.     Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

**C.     The Overrepresentation of and Poor Outcomes for LGBTQ+ and AI/AN Youth in Foster Care**

71.     Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

72.     Defendants admit the allegations in the first sentence of Paragraph 72. With regard to the second sentence, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations.

73.     Deny.

**1.     *Issues Regarding LGBTQ+ Youth in Foster Care***

74.     Defendants admit these allegations to the extent supported by the documents cited, which are the best evidence of their contents; otherwise, deny.

75.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 75.

76.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 76.

77.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 77.

**2.     *Issues Regarding American Indian and Alaska Native Youth in Foster Care***

78.     Defendants admit these allegations to the extent supported by the documents cited, which are the best evidence of their contents; otherwise, deny.

79.     Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

80.     Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

81.     Admit.  Defendants aver that ICWA's protections apply only to children who meet the definition of "Indian Child" in the statute.

82.     Defendants admit this allegation to the extent supported by the statute and caselaw cited, which are the best evidence of their contents; otherwise, deny.

83.     Defendants admit this allegation to the extent supported by the statute cited, which is the best evidence of its contents; otherwise, deny.

84.     Defendants admit this allegation to the extent supported by the statute cited, which is the best evidence of its contents; otherwise, deny.

85.     Defendants admit this allegation to the extent supported by the statute cited, which is the best evidence of its contents; otherwise, deny.

86.     Admit.

87.     Defendants admit that some commenters have stated that ICWA is the "gold standard" for child welfare, but deny that ACF views it as such.

88.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 88. With regard to the remaining allegations in Paragraph 88, Defendants admit them to the extent supported by the documents cited, which are the best evidence of their contents; otherwise, deny.

89.     Defendants deny the allegations in the first sentence of Paragraph 89.  With regard to the second sentence, Defendants deny the allegations and aver that the SNPRM stated that "it is unclear how well state agencies and courts have implemented ICWA's requirements into practice.  Even in states with large AI/AN populations, there may be confusion regarding how and when to apply the law." 81 Fed. Reg. at 20,284. With regard to the third sentence, Defendants admit the allegations to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

90.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations. Defendants aver that the 2020 Final Rule will include reporting on whether children meet the definition of "Indian child " under ICWA and what tribe(s) they may belong to.

91.     Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

**D.     The Decade-Long Effort Producing the 2016 Revisions to AFCARS**

92.     Admit.

93.     Admit.

94.     Admit.

95.     Admit.

96.     Admit.

97.     Defendants admit these allegations to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.  Defendants aver that the memo is nearly a decade old, and Defendants lack knowledge of whether its data and conclusions are still correct.

98.     Defendants admit that ACF issued the CCWIS NPRM in August 2015 and the CCWIS Final Rule in June 2016.  Defendants deny the remaining allegations in Paragraph 98.  Defendants aver

ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
NO. 3:20-CV-06018-MMC                                        9

1 that the CCWIS rule provided for federal reimbursement for IV-E agencies that choose to build a

2 CCWIS and whose systems meet the CCWIS standards.  IV-E agencies are not required to have a

3 CCWIS.  If a IV-E agency has a CCWIS, it must be used to report AFCARS.  However, AFCARS is

4 required to be reported even if the agency does not have a CCWIS. CCWIS is not a database.

5     99.    Defendants admit the first two sentences of this paragraph. Defendants deny the third and

6 aver that, while it may have been an efficient time for some states, it is not possible to draw this

7 conclusion across all states and for this time period.

8         **1.**    ***2015 NPRM***

9     100.    Admit.

10     101.    Defendants admit this allegation to the extent supported by the document cited, which is

11 the best evidence of its contents; otherwise, deny.

12     102.    Defendants deny that the 2015 NPRM recognized "ample research" on the experiences of

13 LGBTQ youth in the child welfare system.  Defendants admit the remaining allegations to the extent

14 supported by the document cited, which is the best evidence of its contents; otherwise deny.  Defendants

15 aver that the NPRM stated that "there is little or no data on the experiences of these youth." 80 Fed. Reg.

16 at 7,155.

17     103.    Defendants admit this allegation to the extent supported by the document cited, which is

18 the best evidence of its contents; otherwise, deny.

19     104.    Defendants admit this allegation to the extent supported by the document cited, which is

20 the best evidence of its contents; otherwise, deny.

21         **2.**    ***2016 SNPRM***

22     105.    Admit.

23     106.    Defendants admit this allegation to the extent supported by the document cited, which is

24 the best evidence of its contents; otherwise, deny.

25

26

27

28

107.    Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

108.    Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

109.    Defendants deny that "the ICWA questions would impose little burden on child welfare agencies in the vast majority of cases."  Defendants admit the remaining allegations to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny. Defendants aver that while ACF estimated that gathering and entering ICWA-related data elements would only take half an hour per non-ICWA child, this overlooks the burden of the cost to develop the system, train workers, and undertake other tasks that represent significant burden regardless of how many ICWA-eligible children are in the jurisdiction.

110.    Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

111.    Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

### 3.    *2016 Final Rule*

112.    Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

113.    Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

114.    Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

115.    Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

116.    Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

1    117.    Admit.

2    118.    Defendants admit this allegation to the extent supported by the document cited, which is

3    the best evidence of its contents; otherwise, deny.

4    119.    Defendants admit that the Final Rule incorporated a data element requiring title IV-E

5    agencies to report the child's sexual orientation for youth age 14 and older, and deny the remaining

6    allegations in Paragraph 119. Defendants aver that data collected through AFCARS is not "voluntarily

7    self-reported" in that IV-E agency caseworkers would be required to ask the relevant questions of all

8    foster youth age 14 or older to avoid the IV-E agency receiving a penalty for missing data.

9    120.    Defendants admit this allegation to the extent supported by the document cited, which is

10   the best evidence of its contents; otherwise, deny.

11   121.    Admit.

12   122.    Defendants admit this allegation to the extent supported by the document cited, which is

13   the best evidence of its contents; otherwise, deny.

14   123.    Defendants admit this allegation to the extent supported by the document cited, which is

15   the best evidence of its contents; otherwise, deny.

16   124.    Defendants admit this allegation to the extent supported by the document cited, which is

17   the best evidence of its contents; otherwise, deny.

18   125.    Defendants admit this allegation to the extent supported by the document cited, which is

19   the best evidence of its contents; otherwise, deny.

20   126.    Defendants admit this allegation to the extent supported by the document cited, which is

21   the best evidence of its contents; otherwise, deny.

22   127.    Defendants admit this allegation to the extent supported by the document cited, which is

23   the best evidence of its contents; otherwise, deny.

24   128.    Defendants admit this allegation to the extent supported by the document cited, which is

25   the best evidence of its contents; otherwise, deny.

26

27

28   ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
     NO. 3:20-CV-06018-MMC                12

129.     Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

130.     Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

**E.     Defendants' Efforts to Prevent the 2016 Final Rule from Taking Effect**

131.     Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

132.     Deny.

133.     Defendants admit the first sentence of this paragraph to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence, except that Defendants admit that the 2015 NPRM stated that "Commenters to the 2008 NPRM also requested clarification and technical assistance on the logistics surrounding the submission of a historical data file and making the substantial system changes and adjustments that title IV–E agencies will need to make in order to comply with the revised AFCARS rules." 80 Fed. Reg. at 7,136.

134.     Defendants admit the allegations in this paragraph, and aver that it would not have been feasible for ACF to provide technical assistance on the 2016 Final Rule, promulgated in December of 2016, before the issuance of Executive Order 13777 in February 2017 required ACF to reassess whether the 2016 Final Rule placed an undue reporting burden on grantees.

135.     Deny.  Defendants aver that pursuant to the requirements of Executive Order 13777 on Enforcing the Regulatory Reform Agenda, they conducted a thoughtful and thorough process to reevaluate the burden imposed by the 2016 Final Rule on title IV-E agencies, as well as the necessity and appropriateness of the data elements contained therein.

136.     Defendants lack knowledge or information sufficient to form a belief about the truth of the statements in this paragraph.

137.    Defendants admit the first sentence of this paragraph. With regard to the second sentence, Defendants admit that the notice of proposed rulemaking would have given title IV-E agencies four years from the 2016 Final Rule's issuance to come into compliance and deny the remaining allegations. Defendants aver that one agency had in fact indicated it would need 3.5 years to come into compliance (81 Fed. Reg. at 90,566) and, more importantly, that the purpose of the delay was to prevent states from unnecessarily incurring costs of developing new systems to comply with the 2016 Final Rule when Defendants, pursuant to Executive Order 13777, were assessing whether the 2016 Final Rule should be revised. 83 Fed. Reg. at 11,451. Additionally, after receiving and considering feedback, Defendants determined that a delay of one fiscal year, rather than two, was appropriate. 83 Fed. Reg. 42,225.

138.    Defendants deny the allegations in this paragraph, and aver that via the 2018 NPRM and 2018 ANPRM they sought additional information to assess whether and how ACF could potentially reduce reporting burden, as required by Executive Order 13777, issued in February 2017.  As Defendants stated in the 2018 NPRM, "The Supplemental Notice of Proposed Rulemaking that added the ICWA compliance data elements to the AFCARS was only open for comment for 30 days. This was an insufficient amount of time for states to fairly analyze unfamiliar data elements, accurately calculate burden associated with these elements, and move any comments through their chain of command for submission to HHS for consideration. The ANPRM, on the other hand, will be open for comment for 90 days. It asks title IV–E agencies and the public to comment on the data elements of the December 2016 final rule." 83 Fed. Reg. at 11,451.

139.    Defendants admit the allegations in the first three sentences of this paragraph. Defendants deny the allegations in the fourth sentence.  Defendants aver that they carefully considered all comments in an effort to strike a "balanced compromise" between "the need for updated data" and "the needs of our grantees, the title IV-E agencies, that must revise their systems to meet new AFCARS requirements and will ultimately be held accountable via compliance and penalties to report the data." 83 Fed. Reg. at 42,226.

140.     Regarding the first sentence in Paragraph 140, Defendants admit that ACF delayed implementation by one year to October 1, 2020 and deny the remaining allegations. Defendants aver that in the Preamble to the 2018 Final Rule, Defendants stated "Commenters in opposition of a delay of the 2016 final rule stated that a delay deprives federal, state, and tribal governments of critical case-level data on information that is not currently reported to AFCARS that can be used to build an evidence base for federal, state, and tribal policymaking and guide budget decisions for achieving positive outcomes…We understand that information reported to AFCARS is important and the 2016 final rule is the first update to the AFCARS regulations since 1993. We must balance the need for updated data with the needs of our grantees, the title IV-E agencies, that must revise their systems to meet new AFCARS requirements and will ultimately be held accountable via compliance and penalties to report the data (see 45 CFR 1355.46 and 1355.47). Therefore, we believe that a balanced compromise is to delay implementation of the 2016 final rule for one year." 83 Fed. Reg. at 42,226. Defendants admit the second sentence of Paragraph 140.

141.     Regarding the first sentence of Paragraph 141, Defendants admit that one of the reasons states provided in favor of the delay was the hope that the extra time would "allow[] ACF time to provide needed technical assistance and guidance on the new AFCARS requirements," and deny the remaining allegations.  Defendants deny the second sentence of this paragraph and aver that they had not predetermined that they would rescind any portions of the 2016 Final Rule, but instead conducted a thorough review and analysis of the burden it presented and the importance and appropriateness of its data elements, as required by Executive Order 13,777.

**F.     Defendants' Decision to Gut the 2016 Final Rule**

**1.     *2018 ANPRM and 2019 NPRM***

142.     Regarding the first sentence of Paragraph 142, Defendants admit the allegations and aver that the purpose of the ANPRM was to assess whether the 2016 Final Rule imposed costs that exceeded benefits, as directed by Executive Order 13,777.  As a result, Defendants solicited comments on "the

data elements and their associated burden." 83 Fed. Reg. 11,449-11,450.  Regarding the second sentence of Paragraph 142, Defendants admit the allegations except deny that the 2018 ANPRM assumed that some data elements were overly burdensome.  Regarding the third sentence of Paragraph 142, Defendants admit the allegations.  Regarding the fourth sentence of Paragraph 142, Defendants admit that the ANPRM requested comments focusing on the benefits of the information at the national level and deny the remaining allegations. Defendants aver that such approach is consistent with the AFCARS statutory authority to "provide comprehensive national information" with respect to foster and adoptive children. 42 USC 679(c)(3).

143.    Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

144.    Defendants admit that most state commenters stated that the requested data elements were overly burdensome. They provided burden estimates that ranged from 70,000 hours to revise their databases to track the non-ICWA data elements and 25,000 hours to do so for ICWA elements to 800 and 200 hours to prepare for the non-ICWA and ICWA elements, respectively. They provided estimates of staff training that ranged from 20 to 102,000 hours depending on the number of staff that require training and materials that must be developed. The remaining Defendants deny the remaining allegations in Paragraph 144.   Defendants aver that the NPRM explained: "The variability in state estimates is expected and appropriate because there is considerable variability across states in sophistication and capacity of information systems, availability of both staff and financial resources, and populations of children in care. It is expected for a state with a large number of children in foster care to provide a much different burden estimate than a state with fewer children in foster care." 84 Fed. Reg. at 16,573. Defendants also aver: "The Supplemental Notice of Proposed Rulemaking that added the ICWA compliance data elements to the AFCARS was only open for comment for 30 days. This was an insufficient amount of time for states to fairly analyze unfamiliar data elements, accurately calculate burden associated with these elements, and move any comments through their chain of command for submission to HHS for consideration." 83 Fed. Reg. at 11,451.

145.     Defendants admit these allegations to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

146.     Defendants admit these allegations to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny. Defendants aver that not all states that submitted comments commented on the data elements related to sexual orientation and ICWA.

147.     Defendants admit that five states recommended retaining the sexual orientation questions and three states recommended retaining some or all of the ICWA data elements. Defendants deny the remaining allegations in Paragraph 147.

148.     Deny.  Defendants aver that while the majority of the commenters that were not states or tribes opposed streamlining data elements, some of those commenters supported such streamlining. 84 Fed. Reg. at 16,574.  Defendants aver that the 2019 NPRM stated that the reasons commenters provided for opposing streamlining were "similar to the commenters representing tribal interests, such as underscoring the importance of certain casework activities and showing national trends. The commenters provided broad commentary on the benefit of having new data outweighs the burden of having to report it." 84 Fed. Reg. at 16,574.

149.     Defendants deny these allegations, except that Defendants admit that ACF determined that non-state commenters provided "broad commentary on [how] the benefit of having new data outweighs the burden of having to report it" and that many of the comments made by non-state commenters were outside the scope of the ANPRM, for reasons including that they addressed topics such as "ACF's authority to collect ICWA-related data elements in AFCARS" or the adequacy of prior "opportunities to comment on AFCARS via prior rulemakings," rather than specific "comments on or estimates for cost or burden related to any aspect of the 2016 final rule." Defendants aver that ACF stated in the 2019 NPRM that "the vast majority of commenters that opposed streamlining are not required to report AFCARS data and did not offer any specific estimates regarding the burden or cost placed on reporting title IV-E agencies." 84 Fed. Reg. 16,575.

150.     Deny. Defendants aver that ACF explained in the 2019 NPRM: "In general, [the tribal commenters] expressed that the state burden in collecting the ICWA-related data elements is not significant enough to warrant streamlining it because of their concerns regarding ICWA compliance." 84 Fed. Reg. at 16,574.

151.     Defendants admit that at least five of the tribes that submitted comments, including Plaintiff Cherokee Nation, have direct title IV-E agencies, and that all of them opposed the proposed streamlining. Defendants admit that California also supported retaining the data elements in full. Defendants deny the remaining allegations in Paragraph 151.

152.     Defendants admit these allegations to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

153.     Deny. Defendants aver that Plaintiffs misstate the purpose of the "Costs and Benefits" section within the Executive Summary of the 2019 NPRM, which was to briefly identify the monetary costs and savings associated with the proposed changes.

154.     Deny. Defendants aver that the 2019 NPRM explained: "We must strongly weigh the desire for more information with the burden on those who are required to report it. The need for streamlining was convincingly argued through the states' detailed work and cost estimates that the 2016 final rule has many data elements that can be streamlined while still providing critical information on the out-of-home care population from a national perspective." 84 Fed. Reg. at 16,575. Additionally, "[a]s part of the process to meet the requirements of E.O. 13777 and on-going intra-agency collaboration related to data collection and analysis at ACF, the Children's Bureau consulted with the Department's subject matter experts with an interest in AFCARS data. We reviewed each data element in the 2016 final rule and evaluated whether it is needed for a specific purpose, such as a title IV-B/IV-E statutory requirement and program monitoring, Congressional reporting, or budgeting, and to specifically identify whether including the data in AFCARS would improve the accuracy and reliability of the data. Given current budgetary constraints on title IV-E and federal agencies, the objective was to be clear on how each data element meets a mandate and how ACF will use the data, thus justifying it being a

1    requirement for reporting. The subject matter experts identified a number of data elements that do not

2    have a specific purpose for title IV-B/IV-E statute or program monitoring, Congressional reporting, or

3    budgeting. Additionally, the Children's Bureau consulted with representatives of the Department of

4    Interior (DOI) regarding the ICWA-related data elements to retain in AFCARS." 84 Fed. Reg. at

5    16,575-6.

6        155.    Defendants admit that the NPRM identified the purposes of AFCARS data collection as

7    "for title IV–B/IV-E statute and program monitoring, Congressional reporting, budgeting, and areas

8    where reporting of required information to AFCARS would improve the accuracy and reliability of the

9    data in AFCARS." Defendants deny the remaining allegations in Paragraph 155. Defendants aver that in

10   the 1993 Final Rule, ACF explained: "The purpose for the establishment of the AFCARS is twofold: To

11   address policy development and program management issues at both the State and Federal levels. The

12   data will enable the Federal Government to more effectively direct and manage the national foster care

13   and adoption assistance programs. The data will respond to the needs of the Congress, the Department

14   and OMB for national data and information upon which to propose, develop, change and implement

15   policy. Specifically, the Department will use these data for: short and long-term budget projections;

16   trend analyses and short and long-term planning; targeting areas for greater or potential technical

17   assistance efforts, for discretionary service grants, for research and evaluation, and for regulatory

18   change; and background and justification for policy changes and legislative proposals." 58 Fed. Reg.

19   67,912.

20       156.    Defendants admit that ACF stated in the NPRM that "it was not well illustrated why

21   AFCARS is the best vehicle for collecting this data when there are other effective options for gathering

22   qualitative information at the national level, such as via surveys, research, or the Child and Family

23   Services Review" and that ACF stated in the 2016 Final Rule that "AFCARS is the only comprehensive

24   case-level data set on the incidence and experiences of children who are in out-of-home care under the

25   placement and care of the title IV–E agency or who are adopted under a title IV–E adoption assistance

26   agreement." Defendants deny the remaining allegations in in Paragraph 156. Defendants aver that ACF

27

28   ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
     NO. 3:20-CV-06018-MMC                        19

1   stated in the preamble to the 2019 NPRM: "Commenters sufficiently argued that many new data

2   elements are qualitative and therefore more accurately evaluated by quality assurance staff, through a

3   case review, or other monitoring efforts. We must strongly weigh the desire for more information with

4   the burden on those who are required to report it. The need for streamlining was convincingly argued

5   through the states' detailed work and cost estimates that the 2016 final rule has many data elements that

6   can be streamlined while still providing critical information on the out-of-home care population from a

7   national perspective." 84 Fed. Reg. 16,575.

8         157.    Defendants admit that ACF determined that the comments on the 2018 ANPRM did not

9   "sufficiently validate[]" the assertion that the data elements in the 2016 Final Rule were "essential for

10   policy making." Defendants deny the remaining allegations in Paragraph 157.  Defendants aver that they

11   explained the rationale for revising the AFCARS regulation in the Preamble to the 2019 NPRM: "ACF

12   understands and appreciates that Congress and stakeholders are interested in the well-being of children

13   in foster care and we understand that national data about these children is useful for many reasons.

14   However, the vast majority of commenters that opposed streamlining are not required to report

15   AFCARS data and did not offer any specific estimates regarding the burden or cost placed on reporting

16   title IV-E agencies. These commenters believed it was necessary for agencies to report qualitative data

17   on particular topics through AFCARS for policy making purposes and justified it with general

18   statements that the benefits of more data outweigh the burden to report it. However, it was not well

19   illustrated why AFCARS is the best vehicle for collecting this data when there are other effective

20   options for gathering qualitative information at the national level, such as via surveys, research, or the

21   Child and Family Services Review. The suggestion that more data elements in AFCARS is essential for

22   policy making was not sufficiently validated in the ANPRM comments. It would have been useful if the

23   commenters identified the specific policies that they felt needed the detailed level of AFCARS data so

24   urgently and why AFCARS specifically is the best means for collection of this data. Congress has

25   passed approximately 24 laws that significantly amended federal child welfare programs since 1995,

26   when AFCARS became effective. These policy changes were made despite not having the additional

27

28   ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  data from the 2016 final rule. Congress recently amended the statute at section 479 of the Act to require

2  data elements it deems relevant for national public interest. For example, Congress required collection of

3  information on sex trafficking victims (section 479(c)(3)(E) of the Act) and prior

4  adoptions/guardianships (section 479(d) of the Act)." 84 Fed. Reg. 16,575.

5       158.    Defendants admit that the NPRM stated that "Congress has passed approximately 24 laws

6  that significantly amended federal child welfare programs since 1995, when AFCARS became

7  effective" and that the Family First Prevention Services Act, signed into law in February 2018, requires

8  states to reduce the number of children in congregate care and utilize evidence-based treatment

9  programs. Defendants deny the remaining allegations in Paragraph 158. Defendants aver that the

10  AFCARS statute requires ACF balance the need for data with the burden collecting such data imposes

11  on IV-E agencies. The fact that Congress has passed many laws significantly amending federal child

12  welfare programs without the benefit of additional AFCARS data goes to the relative need for that data.

13       159.    Deny.

14       160.    Admit.

15       161.    Defendants admit that, in the 2016 Final Rule, ACF had stated that information on

16  youth's sexual orientation was "self-report[ed]" and discussed guidelines for asking such questions.

17  Defendants admit that, in the 2019 NPRM, ACF stated that "mandating such a conversation [about a

18  youth's sexual orientation] may be contraindicated based on a child's history of abuse or neglect."

19  Defendants deny the remaining allegations in Paragraph 161. Defendants aver that ACF explained in the

20  2019 NPRM that if the sexual orientation data element were maintained in AFCARS, asking youth

21  about their sexual orientation "would be a mandatory conversation a worker must have in order to

22  complete the data elements" because a missing or blank response would result in a penalty to the IV-E

23  agency. 84 Fed. Reg. at 16,576.

24       162.    Defendants admit that ACF relied in part on the OMB White Paper in assessing whether

25  it was appropriate to maintain the sexual orientation data elements and that the OMB White Paper

26  "advises that new questions added to a survey or data base should be validated with qualitative

27

28  ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  techniques and question validation efforts should include both the SOGI [i.e., sexual orientation and

2  gender identity] and non-SOGI groups." Defendants deny the remaining allegations in Paragraph 162.

3      163.    Defendants admit that the questions ACF incorporated in the 2016 Final Rule were

4  consistent with the Centers for Disease Control and Prevention's Youth Risk Behavior Surveillance

5  System ("YRBSS") and that the OMB White Paper recognized YRBSS as one of the "main ways sexual

6  identity is asked in Federal surveys/studies." Defendants deny the remaining allegations in Paragraph

7  163. Defendants aver that the OMB White Paper in fact states that "even if a validated SOGI question is

8  used, additional testing during the design phase may be needed to evaluate how the question performs in

9  a new setting with a different audience."

10     164.    Defendants admit that the NPRM stated that, regarding the sexual orientation of foster

11 parents, adoptive parents, and legal guardians, "there will be an opportunity for analysis via a

12 combination of information gleaned from other data elements, for example, the sex and marital status of

13 foster parents, adoptive parents, and legal guardians. The information from these data elements will

14 provide an overview of the number of foster, adoptive, and legal guardian couples who identify as non-

15 heterosexual." 84 Fed. Reg. at 16,577. Defendants deny the remaining allegations in Paragraph 164.

16 Defendants aver that the OIG Report cited is now nearly 20 years out of date, and so does not account

17 for any intervening changes to states' reporting.

18     165.    Defendants admit that the quoted text from the 2016 Final Rule is accurate. Defendants

19 deny the remaining allegations in in Paragraph 165.   Defendants aver that the 2020 Final Rule

20 maintained the data element from the 2016 Final Rule that asked whether "family conflict related to the

21 child's sexual orientation, gender identity, or gender expression" was one of the circumstances

22 contributing to the child's removal. 84 Fed. Reg. at 16,577.

23     166.    Defendants admit these allegations to the extent supported by the documents cited, which

24 are the best evidence of their contents; otherwise, deny.

25     167.    Defendants admit these allegations to the extent supported by the documents cited, which

26 are the best evidence of their contents; otherwise, deny.

27

28

168.    Defendants admit that the quotation from the 2016 Final Rule is accurate.  Defendants deny the remaining allegations in Paragraph 168.

169.    Deny.  Defendant aver that the 2019 Final Rule stated: "Many states felt that some of the ICWA-related data elements in the 2016 final rule are redundant, overly detailed, could be streamlined, or are too specific for a national data set and are better suited for a qualitative review."

170.    Defendants admit that the 2019 NPRM stated that "the next program instruction for the CIP will encourage grantees to work with the dependency courts across their jurisdictions to enhance efforts to collect and track key ICWA data indicators." Defendants deny the remaining allegations in Paragraph 170.  Defendants aver that this was not a "hollow promise."  The program instruction as referenced in the 2019 NPRM was released on December 17, 2020. The document that Plaintiffs refer to in this paragraph is a Paperwork Reduction Act (PRA) notice.

171.    Defendants admit that, in the 2019 NPRM, ACF "used the median of the states' estimates for the estimates related to training and developing or modifying procedures and systems [and] used the average of the states' estimates for the estimates of gathering/entering information, reporting, and the labor rate." 84 Fed. Reg. at 16,587. Defendants aver that ACF explained in the 2019 NPRM that "States ranged considerably in estimating the work needed and length of time it would take to comply with the 2016 final rule, which is expected and appropriate because there is considerable variability across states in sophistication of information systems, availability of both staff and financial resources, and populations of children in care. Thus, we used the median of the states' estimates for the estimates related to training and developing or modifying procedures and systems. We used the average of the states' estimates for the estimates of gathering/entering information, reporting, and the labor rate." 84 Fed. Reg. at 16,587. Defendants aver that ACF further explained its methodology for calculating the recordkeeping and reporting hours at 84 Fed. Reg. at 16,589. Defendants deny the remaining allegations in Paragraph 171.

172.    Defendants admit this allegation to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

173.   Deny.  Defendants aver that ACF determined in the 2019 NPRM that "searching data sources, gathering information, and entering the information into the system would take on average 4.02 hours annually for all children who enter foster care, for a total of 1,099,627 hours annually." 84 Fed. Reg. 16,588.

174.   Deny.  Defendants aver that, as ACF stated in the 2019 NPRM at 84 Fed. Reg. 16,588: "The estimates provided in the NPRM are spread across respondents for the purposes of the PRA estimates; however, we understand based on the ANPRM comments that actual burden hours and costs will vary due to sophistication and capacity of information systems, availability of staff and financial resources, and populations of children in care." Accordingly, the estimated cost savings from reducing the data elements by 33% is spread across respondents as well.

175.   Deny.  Defendants aver that as ACF noted in the 2019 NPRM: "As more title IV-E agencies build CCWIS, ACF anticipates it will lead to more efficiency in reporting and less costs and burden associated with reporting AFCARS data." 84 Fed. Reg. at 16,588. However, not all states have declared a CCWIS and no states have a fully implemented CCWIS. Defendants further aver that the Paperwork Reduction Act defines "burden" as "the total time, effort, or financial resources expended…to…provide information to or for a Federal agency," and therefore, the agency considered the total burden created by the final rule regardless of the funding stream used to pay for it. 5 C.F.R. 1320.3(b)(1).

### 2.   *2020 Final Rule*

176.   Defendants admit these allegations to the extent supported by the document cited, which is the best evidence of its contents; otherwise, deny.

177.   Deny.  Defendants aver that "the overwhelming majority of state and local agencies supported streamlining the data elements," while all Indian tribes and other organizations representing tribal interests recommended maintaining the ICWA data elements and the vast majority of national advocacy organizations and other individuals or entities opposed streamlining the data elements. 85 Fed. Reg. at 28,411.

178.    Defendants admit that the 2020 Final Rule finalized the changes proposed in the 2019 NPRM. Defendants deny the remaining allegations in Paragraph 178.

179.    Deny. Defendants aver that Executive Order 13,777 "directed Federal agencies to establish a Regulatory Reform Task Force to review existing regulations and make recommendations regarding their repeal, replacement, or modification. The HHS Regulatory Reform Task Force identified the AFCARS final rule … as one in which the reporting burden may impose costs that exceed benefits." Accordingly, ACF was required to further inquire into whether its costs exceeded its benefits.

180.    Deny.

181.    Deny.

182.    Defendants admit that ACF concluded in the 2020 Final Rule that it did not "have a sufficient justification, or a rational basis, for retaining the data elements proposed for removal." Defendants deny the remaining allegations in Paragraph 182.

183.    Defendants admit that ACF understands the purpose of AFCARS to be collecting data for national purposes such as "a title IV–B or IV–E statutory requirement, program monitoring, Congressional reporting, or budgeting." Defendants deny the remaining allegations in Paragraph 183.

184.    Defendants admit that the ACF website identifies the uses for AFCARS listed in Paragraph 184.  Defendants deny the remaining allegations in Paragraph 184.

185.    Deny.

186.    Deny.

187.    Deny.

188.    Defendants admit that ACF stated in the 2020 Final Rule that commenters appeared to have a "misunderstanding of AFCARS and its functionality" and that "The information that title IV–E agencies report to AFCARS is aggregated and de-identified at the national level, meaning it does not include names, numbers, or other information." Defendants deny the remaining allegations in Paragraph 188.

189.   Defendants admit that ACF stated in the 2020 Final Rule that "we will not release specific information regarding a child's tribal membership or ICWA applicability to requestors, except for the Indian tribe of which the child is or may be a member." Defendants deny the remaining allegations in Paragraph 189.

190.   Deny.

191.   Defendants admit that ACF stated in the 2020 Final Rule that "the 2016 final rule ICWA-related data elements would not be available for ICWA compliance purposes because ACF is unable to release information to other entities that could use it for this purpose." Defendants deny the remaining allegations in Paragraph 191.

192.   Defendants admit that ACF stated in the 2020 Final Rule that it has "authority only for the collection of data elements that are used for functions and oversight under HHS authority, namely the title IV–B and IV–E programs," that "[t]he AFCARS statute does not provide authority for ACF to require states to report specific details on ICWA's requirements in AFCARS to be used for ICWA compliance," and that it is not authorized to "determine compliance with ICWA and/or penalize states for failure to comply with ICWA." Defendants admit that the AFCARS statute requires ACF to collect data on both "the status of the foster care population" and "the extent and nature of assistance provided by Federal, State, and local adoption and foster care programs and the characteristics of the children with respect to whom such assistance is provided."  Defendants deny the remaining allegations in Paragraph 192. Defendants aver that 42 U.S.C 622(b)(9) requires states to describe their measures taken to comply with ICWA in their IV-B state plan, but does not require any such reporting via AFCARS.

193.   Deny.

194.   Defendants admit that the 2020 Final Rule stated that the next Court Improvement Program (CIP) program instruction will emphasize collecting and tracking ICWA-related data and will be coupled with technical assistance through the CB's technical assistance provider for CIP grantees and the courts to help address this historic and ongoing information gap."  Defendants deny the remaining allegations in Paragraph 194.  Defendants aver that this was not "disingenuous."  The program

1    instruction as referenced in the 2020 Final Rule was released on December 17, 2020. The document that

2    Plaintiffs refer to in this paragraph is a Paperwork Reduction Act (PRA) notice.

3    195.    Deny.

4    196.    Deny.

5    197.    Deny.

6    198.    Deny.

7    199.    Defendants admit that the 2020 Final Rule stated that "those guidelines are not relevant to

8    collecting sexual orientation information through a Federal administrative data collection" because they

9    provided guidelines "for child welfare staff and child welfare agencies on how they interact with clients,

10   and gather and manage SOGI information at the case, local, and state level." Defendants deny the

11   remaining allegations in Paragraph 199.  Defendants aver that they explained in the 2019 NPRM "that

12   other personal information is reported to AFCARS, such as medical or mental health information." Such

13   data is different from data about sexual orientation because it "is documented in official documents,

14   such as medical reports and records, and is in the child's case record because section 475(1)(C) of the

15   Act requires health and education records be in the case plan. Information on sexual orientation is not

16   required by the Act to be in the child's case plan, and while states agreed that the individual workers

17   knowing this information about children and families they work with may help them in assisting

18   families, there is no statutory requirement that it be reported to a national administrative data set." 84

19   Fed. Reg. 16,577.

20   200.    Deny.  Defendants aver that in the 2016 Final Rule they referenced the existence of

21   "guidance and recommended practices for how to promote [respectful treatment, sensitivity, and

22   confidentiality] in serving LGBT youth in adoption, foster care and out-of-home placement settings."

23   201.    Defendants admit that the 2020 Final Rule stated that sexual orientation data "can be

24   collected as part of the title IV–E agency's casework and should be documented in the case file, if it

25   pertains to the circumstances of the child, and reporting it to a national database would not enhance [title

26

27

28

1  IV–E agencies'] work with children and families." Defendants deny the remaining allegations in
2  Paragraph 201.

3      202.    Defendants admit that the 2020 Final Rule stated that ACF "ha[s] no need for such data"
4  at the Federal level." Defendants deny the remaining allegations in Paragraph 202. Defendants aver that
5  the 2020 Final Rule further explained that "we did not receive a significant number of comments from
6  title IV–E agencies requesting changes. Further, we have no compelling reason to increase the agency's
7  burden to require this information be reported to AFCARS." 85 Fed. Reg. 28,414.

8      203.    Deny.

9      204.    Defendants admit that the burden estimate was substantively unchanged from the 2019
10 NPRM because ACF "us[ed] the 2019 NPRM burden estimate since we did not make substantive
11 changes in this final rule. Changes in the final rule estimate are attributed to updated input numbers,
12 such as labor rate and number of children in foster care." 85 Fed. Reg. at 28,420. Defendants deny the
13 remaining allegations in Paragraph 204.  Defendants aver that ACF considered the additional comments
14 on burden provided in response to the 2019 NPRM but "[w]e did not make changes to the burden
15 estimates in this final rule based on this additional information because there was not enough detailed
16 information to draw any different conclusions than we did in calculating the burden estimates for the
17 2019 NPRM. Tribal title IV–E agencies did not provide burden estimates in their comments." 85 Fed.
18 Reg. at 28,421.

19     205.    Defendants admit that the sections of the 2020 Final Rule requiring states to report new
20 data elements will go into effect on Oct. 1, 2022.  Defendants deny the remaining allegations in
21 Paragraph 205.

22              **V.    HARM TO PLAINTIFFS**

23     206.    Deny.

24     207.    Defendants admit these allegations to the extent supported by the statute and documents
25 cited, which are the best evidence of their contents; otherwise deny.  Defendants aver that access to the
26 full AFCARS data set is restricted through an application process that requires applicants, primarily

27

28 ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
   NO. 3:20-CV-06018-MMC                          28

researchers, to demonstrate that they adhere to best practices in ethical and professional standards of human subjects research.

208.    Deny.

209.    Deny.

**A.      California Tribal Families Coalition**

210.    Deny.

211.    Deny.

212.    Deny.

213.    Deny.

214.    Deny.

215.    Deny.

216.    Deny. Defendants aver that the 2020 Final Rule requires IV-E agencies to report, among other items, whether children are (1) members, or eligible for membership, in a federally-recognized Indian tribe, (2) whether ICWA applies to them, (3) whether the child's tribe was sent legal notice by the IV-E agency, and (4) whether the child's birth parents are tribal members. 85 Fed. Reg. 28,414.

217.    Deny.

**B.      Yurok Tribe**

218.    Deny.

219.    Deny.

220.    Deny.

221.    Deny.

222.    Deny.

**C.      Cherokee Nation**

223.    Deny.

224.    Deny.

1    225.   Deny.

2    226.   Deny.

3    227.   Deny.

4    **D.     Facing Foster Care in Alaska**

5    228.   Deny.

6    229.   Deny.  Defendants aver that the sexual orientation data would likely be unreliable and an

7    undercount. See 84 Fed. Reg. at 16574.

8    230.   Deny.

9    231.   Deny.

10   232.   Deny.

11   233.   Deny.

12   **E.     Ark of Freedom Alliance**

13   234.   Deny.

14   235.   Deny.

15   236.   Deny.

16   237.   Deny.

17   **F.     Ruth Ellis Center**

18   238.   Deny.

19   239.   Deny.

20   240.   Deny.

21   241.   Deny.

22   242.   Deny.

23   **G.     True Colors, Inc.**

24   243.   Deny.

25   244.   Deny.

26

27

28

245.    Deny.

246.    Deny.

247.    Deny.

## VI.    CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF

### COUNT ONE
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT,
### 5 U.S.C. §§ 706(2)(A)

248.    In Paragraph 248, Plaintiffs reallege the prior paragraphs as if fully stated therein. Defendants thus incorporate by reference here their answers to those paragraphs.

249.    Admit.

250.    Deny.

251.    Deny.

252.    Deny.

### PRAYER FOR RELIEF

The final section of the Complaint, titled "Prayer for Relief," consists of Plaintiffs' request for relief, to which no response is required; to the extent a response is deemed required, Defendants deny that Plaintiff is entitled to the relief requested or any relief whatsoever.

Each and every allegation of the Complaint not heretofore expressly responded to is hereby denied.

### AFFIRMATIVE DEFENSES

In further answer to the Complaint and as separate and distinct defenses to Plaintiffs' claims set forth in the Complaint, Defendants allege the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

1.    The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

2.    Plaintiffs lack standing.

1

**THIRD AFFIRMATIVE DEFENSE**

2

3.      The Complaint raises claims that are moot.

3

**FOURTH AFFIRMATIVE DEFENSE**

4

4.      The Complaint raises claims that are not ripe.

5

Defendant reserves the right to assert additional affirmative defenses as warranted.

6

**PRAYER FOR RELIEF**

7

WHEREFORE, Defendant prays that:

8

1.      Plaintiffs takes nothing by the Complaint;

9

2.      The Complaint be dismissed with prejudice;

10

3.      Judgment be entered in favor of Defendants;

11

4.      Defendants be awarded their costs of suit;

12

5.      The Court award such other and further relief, as it may deem proper.

13

14

DATED:  December 23, 2020                          Respectfully submitted,

15

DAVID L. ANDERSON
United States Attorney

16

17

 /s/ *Emmet P. Ong*
EMMET P. ONG

18

Assistant United States Attorney

19

*Attorneys for Defendants Alex Azar, in his official*

20

*capacity as Secretary of Health and Human*
*Services; Lynn A. Johnson, in her official capacity*

21

*as Assistant Secretary for the Administration for*
*Children and Families; U.S. Department of Health*

22

*and Human Services; and Administration for*
*Children and Families*

23

24

25

26

27

28

ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
NO. 3:20-CV-06018-MMC                          32