1  STEPHANIE M. HINDS (CABN 154284)
   Acting United States Attorney
2  SARA WINSLOW (DCBN 457643)
   Chief, Civil Division
3  EMMET P. ONG (NYBN 4581369)
   Assistant United States Attorney
4

5      1301 Clay Street, Suite 340S
       Oakland, California 94612-5217
6      Telephone: (510) 637-3929
       Facsimile: (510) 637-3724
7      E-mail: emmet.ong@usdoj.gov

8  Attorneys for Defendants

9

10                     UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13

14  CALIFORNIA TRIBAL FAMILIES COALITION )   Civil Action No. 3:20-cv-06018-MMC
    *et al.*,                            )
15                                       )
           Plaintiffs,                   )
16                                       )
        v.                               )   **JOINT SUBMISSION REGARDING STAY**
17                                       )   **OF SUMMARY JUDGMENT BRIEFING**
    ALEX AZAR *et al.*,                  )   **SCHEDULE**
18                                       )
           Defendants.                   )
19  _____  )

20

21

22

23

24

25

26

27

28

1     Pursuant to the Court's order dated August 17, 2021, Dkt. No. 93, the parties make the following

2  joint submission regarding the summary judgment briefing schedule.  Defendants intend to file a motion

3  for voluntary remand of the final rule promulgated in 2020 ("2020 Final Rule") that updated the

4  requirements for the Adoption and Foster Care Analysis and Reporting System ("AFCARS").

5  Defendants request that the summary judgment briefing schedule be stayed until the Court rules on

6  Defendant's motion for voluntary remand.  Plaintiffs oppose Defendants' request to stay the summary

7  judgment briefing schedule.

8     ***Defendants' Statement:***

9     As the Court knows, the parties had, until recently, been engaged in discussions regarding an

10  amicable resolution to this action.  Defendants are hopeful that Judge Beeler and the parties will

11  participate in a settlement conference in September 2021 to further explore the possibility of settlement.

12  If the litigation is not settled, however, Defendants will request that the Court remand the 2020 Rule

13  back to U.S. Department of Health and Human Services ("HHS" or the "Agency"), without vacatur, so

14  that the Agency can reconsider the 2020 Rule.  Unless ordered otherwise, Defendants will file their

15  motion for voluntary remand without vacatur by no later than September 30, 2021.

16     Defendants request that the Court stay summary judgment briefing until it adjudicates

17  Defendants' motion for voluntary remand.  *Anchor Line Ltd. v. Fed. Maritime Comm'n*, 299 F.2d 124,

18  125 (D.C. Cir. 1962), *cert. denied*, 370 U.S. 922 (1962) ("[W]hen an agency seeks to reconsider its

19  action, it should move the court to remand or to hold the case in abeyance pending reconsideration by

20  the agency.").  The Court has the discretion to hold these proceedings in abeyance while it considers

21  Defendants' motion for voluntary remand.  *See Amalgamated Transit Union, Int'l v. United States DOL*,

22  No. 2:20-cv-00953-KJM-DB, 2021 U.S. Dist. LEXIS 95485, at *4 (E.D. Cal. May 18, 2021) ("A district

23  court has discretion to remand a decision to an administrative agency or hold a matter in abeyance

24  pending reconsideration at the agency's request . . . .").  The Court's exercise of such discretion is

25  warranted in this case because Defendants' motion for voluntary remand would preempt the need for

26  further summary judgment briefing, thereby conserving both the Court's and the parties' resources.

27     The Ninth Circuit has held that "courts only refuse voluntarily requested remand when the

28  agency's request is frivolous or made in bad faith." *Cal. Cmtys. Against Toxics v. United States EPA*,

688 F.3d 989, 992 (9th Cir. 2012) (citing *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)).  On remand, the Administration for Children and Families ("ACF") within HHS intends to seek Departmental clearance from agency leadership, and if clearance is received, work to issue a notice of proposed rulemaking and seek comment regarding a rule that would include sexual orientation data elements that were in the version of the rule promulgated in 2016 and removed by the 2020 Final Rule. In addition, though not the subject of this litigation, and not subject to the jurisdiction thereof, ACF would seek clearance, and if clearance is received issue a separate and mandatory ICWA-related data collection under the authority of sections 471(a)(6) and 476(a)(2) of the Social Security Act.  ACF within HHS is currently taking concrete, good faith steps towards beginning the process of obtaining such Departmental approval.

Therefore, it would conserve the Court's and the parties' time and resources to stay summary judgment briefing.  Hearing the motion in lieu of continuing with summary judgment briefing would also be consistent with the policy that "[a]dministrative reconsideration is a more expeditious and efficient means of achieving an adjustment of agency policy than is resort to the federal courts." *B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990) (internal quotation marks and citation omitted); *see also Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) ("We commonly grant such motions [for remand], preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete.").

Defendants' motion will request that the Court remand the 2020 Rule without vacating it. "Whether agency action should be vacated depends on how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'" *Cal. Cmtys. Against Toxics*, 688 F.3d at 992 (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).  In addition, in considering vacatur, Courts must balance any errors they do find "against the consequences of such a remedy."  *Id.* at 993.

Contrary to Plaintiffs' assertions, however, the Court need not decide the litigation on the merits to determine whether vacatur is appropriate.  While the *Allied Signal* test indicates that the Court should consider the magnitude of the agency's errors, that prong is not applicable, or is at least far less

important, in cases such as this one.  As explained by the Federal Circuit in the leading decision on the subject of voluntary remand, an "agency may request a remand (*without confessing error*) in order to reconsider its previous position."  *SKF*, 254 F.3d at 1029 (emphasis added).  An agency may do so because "it wishe[s] to consider further the governing statute, or the procedures that were followed."  *Id.* "It might simply state that it had doubts about the correctness of its decision or that decision's relationship to the agency's other policies."  *Id.*  Here, the Agency will be requesting remand, without confessing error, so that it can reconsider its previous position regarding the collection of the sexual orientation and ICWA data elements.  Because the law permits the Agency to obtain remand without confessing error, Plaintiffs' argument that the Court is nonetheless required to first determine whether the Agency committed error, and the magnitude of any such error, is without merit.

Following *SKF*, courts in the Ninth Circuit and elsewhere—without first rendering a decision on the merits—have routinely granted motions for voluntary remand without vacatur where the agency did not confess error.  *See, e.g., Del. Riverkeeper Network v. United States EPA*, No. 20-3412, 2021 U.S. Dist. LEXIS 147539, at *10 (E.D. Pa. Aug. 6, 2021) ("[T]he Court finds that remand to the EPA is appropriate here, where the agency has indicated its clear intent to revise the Rule on its own.  It would not serve interests of judicial economy to continue a case regarding a Rule that will likely no longer be law once the agency makes its revisions."); *Neighbors Against Bison Slaughter v. Nat'l Park Serv.*, No. CV 19-128-BLG-SPW, 2021 U.S. Dist. LEXIS 22584, at *9-10 (D. Mont. Feb. 4, 2021) (granting motion for voluntary remand without vacatur where agency sought to conduct additional analysis without confessing error); *Cottonwood Envtl. Law Ctr. v. Bernhardt*, No. CV 18-12-BU-SEH, 2020 U.S. Dist. LEXIS 233429, at *2-4 (D. Mont. Dec. 10, 2020) (denying Plaintiffs' request to adjudicate motion for preliminary injunction and granting motion for voluntary remand without vacatur where agency sought to conduct additional analysis); *In re Makhteshim Agan of N. Am. v. Nat'l Marine Fisheries Serv.*, No. PWG-18-961, 2019 U.S. Dist. LEXIS 199008, at *4-14 (D. Md. Oct. 18, 2019) (granting motion for voluntary remand without vacatur, prior to the completion of summary judgment briefing, where agency sought to reconsider its biological opinion without confessing error); *State v. Wheeler*, No. 1:14-cv-00264-JDL, 2018 U.S. Dist. LEXIS 204072, at *5-9 & n.1 (D. Me. Dec. 3, 2018) (staying summary judgment briefing and granting motion for voluntary remand without vacatur where agency

1   indicated its intent to revise its decision without confessing error); *XP Vehicles, Inc. v. United States*

2   *DOE*, 156 F. Supp. 3d 185 (D.D.C. 2016); *Code v. McHugh*, 139 F. Supp. 3d 465 (D.D.C. 2015).

3         Plaintiffs seem to contend that the Ninth Circuit's ruling in *Cal. Cmtys. Against Toxics* requires

4   the first prong of the *Allied Signal* test to be applied in all voluntary remand cases, but that is not correct.

5   In that case, the agency "admitted that the reasoning adopted for its final rule was flawed." *Cal. Cmtys.*

6   *Against Toxics*, 688 F.3d at 992.  The Ninth Circuit did not rule in that case, and has never held, that the

7   *Allied Signal* test applies in cases where the agency does not confess error.  For good reason, because it

8   would be illogical and not serve judicial economy to allow an agency to obtain remand without

9   confessing error while simultaneously requiring an in-depth inquiry into whether the agency committed

10   error.  This is demonstrated by two recent Ninth Circuit orders, which plainly show the Court that it is

11   not required to undertake an extensive review of the correctness of the agency's action or the

12   administrative record to determine whether vacatur is appropriate, especially where (as is the case here)

13   the agency intends to revisit the challenged action without confessing error.  *See Neighbors for Envtl.*

14   *Justice v. United States EPA*, Nos. 20-72091, 20-73276, 2021 U.S. App. LEXIS 20889, at *4-5 (9th Cir.

15   July 14, 2021) (granting "request for voluntary remand without vacatur to permit EPA to conduct

16   reconsideration proceedings" without analyzing *Allied Signal* factors); *Safer Chems. v. United States*

17   *EPA*, 791 F. App'x 653, 656-57 (9th Cir. 2019) ("Accepting EPA's representation that it can address

18   Petitioners' concerns, we agree with EPA that remand without vacatur is appropriate with respect to the

19   challenged provisions" and doing so without analyzing *Allied Signal* factors  (citing *Cal. Cmtys. Against*

20   *Toxics*, 688 F.3d at 992)).

21         In arguing that the Court must first address the merits of the case, Plaintiffs point to a single

22   district court case, *NRDC v. Norton*, No. 1:05-CV-01207 OWW LJO, 2006 U.S. Dist. LEXIS 94689

23   (E.D. Cal. Dec. 29, 2006).  To Defendants' knowledge, no court has followed *NRDC's* case-specific

24   analysis or otherwise concluded that the alleged deficiencies in a challenged rule must be fully litigated

25   before a vacatur determination can be made.  Indeed, as demonstrated by the cases cited *supra*, courts,

26   including the Ninth Circuit, have been able to determine that a rule should not be vacated even without

27   the benefit of full briefing on the merits.

28         Plaintiffs spend most of their statement arguing that the Court would ultimately conclude that it

would be inappropriate to grant remand without vacatur.  While Defendants are prepared to address these contentions, Plaintiffs do not point to any authority requiring an agency to first establish that it is likely to succeed on its motion for voluntary remand to obtain a stay of summary judgment briefing. Nor are Defendants aware of the existence of any such authority.  Therefore, the Court should decline Plaintiffs' invitation to prejudge the outcome of Defendants' motion for voluntary remand based on a one-sided presentation of the issues.  Rather, the Court should follow the many other courts that found it appropriate to hear a motion for voluntary remand prior to the conclusion of summary judgment briefing.

For the foregoing reasons, proceeding with summary judgment briefing is neither required nor justified.  Allowing Defendants to first go forward with a motion for voluntary remand, if the case does not settle, would serve judicial economy and advance the policy of allowing an agency the opportunity to redress a plaintiff's concerns without court intervention.  Therefore, given ACF/HHS's good faith intention to reconsider the data elements sought to be reinstated by Plaintiffs, the Court should stay summary judgment briefing until it rules on Defendants' forthcoming motion for voluntary remand.

If the Court denies Defendants' request to stay the summary judgment briefing schedule, then Defendants request that deadline for their combined summary judgment cross-motion/opposition and motion for voluntary remand be extended to September 30, 2021, so that the parties can first complete their settlement conference with Judge Beeler.  Plaintiffs' reply/opposition would be due October 14, 2021; Defendants' reply would be due October 28, 2021.  The parties will re-notice a hearing date that is convenient for the Court and the parties.

### *Plaintiffs' Statement:*

Although Plaintiffs agree with Defendants that the challenged 2020 rule must be remanded to the agency, remand *without vacatur* is appropriate only in "rare circumstances." *Humane Soc'y v. Locke*, 626 F.3d 1040, 1054 n.7 (9th Cir. 2010); *see also Behring Regional Ctr. v. Wolf*, No. 20-cv-9263, 2021 WL 2554051, at *9 (N.D. Cal. June 22, 2011) ("In the Ninth Circuit, remand without vacatur is the exception rather than the rule."). While Defendants are entitled to seek that uncommon disposition, their plan to do so presents no reason to stay briefing and consideration of Plaintiffs' long-pending motion for summary judgment. Instead, the Court should consolidate Defendants' proposed

motion with summary judgment briefing so that it can expeditiously determine whether remand should be with or without vacatur.

Staying summary judgment briefing would be inappropriate for several reasons. First, a motion to remand without vacatur requires consideration of the seriousness of the deficiencies of the challenged rule, which necessarily entails evaluating the merits at issue in Plaintiffs' summary judgment motion. Because a motion for remand without vacatur could not be granted without undertaking much of the same analysis as at summary judgment, consolidating the two issues will conserve the Court's and parties' resources. Second, Defendants' motion is unlikely to succeed because they cannot show that vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error. Third, Defendants cannot rescind the challenged rule without going through a lengthy rulemaking process. All the while, the challenged rule—a rule that Defendants' motion presupposes is defective or at least undesirable—will remain in effect and continue to harm Plaintiffs. Fourth, Defendants' actions have already delayed the collection and dissemination of this crucial data, and postponing the resolution of this case would prolong the harms to Plaintiffs and the vulnerable youth who would benefit most from the data.

*First*, to determine whether remand *without vacatur* is an appropriate disposition, the Court must "weigh [1] the seriousness of the agency's errors against [2] the disruptive consequences of an interim change that may itself be changed." *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015). A court may decline to vacate agency decisions "only 'when vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error.'" *AquAlliance v. U.S. Bureau. of Reclamation*, 312 F. Supp. 3d 878, 882 (E.D. Cal. 2018) (quoting *Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin. Nat'l Marine Fisheries Serv.*, 109 F. Supp. 3d 1238, 1246 (N.D. Cal. 2015)). This framework is commonly known as the *Allied-Signal* test. *See, e.g.*, *id.* at 881 (citing *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)). "In assessing the first factor, the "seriousness of the agency's errors," courts often consider, among other things, "the magnitude of the administrative error and how extensive, substantive and serious it was," "the possibility the agency will be able to substantiate its decision given an opportunity to do so," "the likelihood that the errors can be mended and that such changes can be made without

1   altering the order," and "equity and public interest considerations." *Nat. Res. Def. Council, Inc. v.*

2   *Norton* ("*NRDC*"), No. 05-cv-1207, 2007 WL 14283, at *13 (E.D. Cal. Jan. 3, 2007).

3   The first *Allied-Signal* factor cannot be appropriately evaluated without first considering the

4   exact issues presented by Plaintiffs' motion for summary judgment: whether the 2020 Rule was contrary

5   to law and/or arbitrary and capricious. While the Court need not issue a conclusive merits judgment to

6   decide the vacatur question, it is impossible to assess the magnitude and seriousness of the agency's

7   errors and how likely it is that the agency could fix them without at least considering what errors were

8   made. Defendants' motion cannot succeed without a showing that the agency's errors were not serious,

9   and the Court cannot grant it without examining Plaintiffs' contentions about those errors. Thus, the

10  parties would have to brief and the Court analyze nearly every issue already presented in Plaintiffs'

11  motion.[1]

12  *NRDC* is instructive. In that case, the government moved to remand without vacatur before

13  answering plaintiffs' complaint. The court denied that motion, observing that it was difficult to apply the

14  remand-without-vacatur framework "because the alleged deficiencies in the challenged [rule] have not

15  yet been fully litigated." *NRDC*, 2007 WL 14283, at *9. It explained the parties' merits disputes at

16  length, leading to the conclusion that it could not remand the case without vacatur "*prior* to any decision

17  on the merits." *Id.* at *12. So too here: any attempt to apply the *Allied-Signal* test without conducting

18  merits briefing will prove inconclusive. Therefore, consolidating Defendants' motion to remand with

19  their opposition to Plaintiffs' motion for summary judgment—as is commonly done with cross-motions

20  seeking different dispositions on undisputed facts—would be far more efficient than examining the

21  merits in a stand-alone motion for remand without vacatur.

22  While Defendants suggest that *Allied-Signal* may "not [be] applicable" to requests for voluntary

23  remand, *see supra* pp. 2-3, this is directly contrary to Ninth Circuit precedent. *See Cal. Cmtys. Against*

24  *Toxics v. U.S. EPA*, 688 F.3d 989, 994 (9th Cir. 2012) (applying *Allied-Signal* to a request for voluntary

25  remand). Defendants' principal case, *SKF USA Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001), did

26

27

28  [1] The only exception is standing. But Defendants did not dispute standing at the Rule 12 stage.
    Even if they raise it for the first time at summary judgment, there is no reason to believe it will be a
    significant burden compared to the heavily overlapping merits issues.

not address the legal standard that applies to vacatur questions; it merely discussed the various situations in which courts can remand agency action. *Id.* at 1029. Indeed, in *California Communities Against Toxics*, the Ninth Circuit cited *SKF* for the standard regarding *remand*—and then immediately cited *Allied-Signal* for the standard regarding *vacatur*. 688 F.3d at 992.

None of Defendants' other cases suggest otherwise. Most did not discuss vacatur at all, *see Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993); *B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 (D.C. Cir. 1990); *XP Vehicles, Inc. v. U.S. DOE*, 156 F. Supp. 3d 185 (D.D.C. 2016); *Code v. McHugh*, 139 F. Supp. 3d 465 (D.D.C. 2015); declined to vacate without discussing the *Allied-Signal* test mandated in the Ninth Circuit, *see In re Makhteshim Agan of N. Am. v. Nat'l Marine Fisheries Serv.*, No. PWG-18-961, 2019 U.S. Dist. LEXIS 199008, at *4-14 (D. Md. Oct. 18, 2019); *State v. Wheeler*, No. 1:14-cv-00264-JDL, 2018 U.S. Dist. LEXIS 204072, at *5-9 & n.1 (D. Me. Dec. 3, 2018); or were non-precedential orders with little or no reasoning, *see Neighbors for Envtl. Justice v. U.S. EPA*, Nos. 20-72091, 20-73276, 2021 U.S. App. LEXIS 20889 (9th Cir. July 14, 2021); *Safer Chems., Healthy Families v. U.S. EPA*, 791 F. App'x 653 (9th Cir. 2019).[2] The few cases where courts did remand without vacatur after analyzing the issue involved severe public harms unlike anything vacatur could even arguably cause here, as discussed further below. And in the most analogous cases Defendants cite, the courts remanded *with vacatur* or denied the defendant's request to stay judicial proceedings indefinitely during the agency's reconsideration. *See Ctr. for Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1241-42 (D. Colo. 2011) (vacating rule); *Amalgamated Transit Union, Int'l v. U.S. DOL*, No. 20-cv-953, 2021 U.S. Dist. LEXIS 95485, at *4 (E.D. Cal. May 18, 2021) (denying the agency's request for "[a]n indefinite stay [that] would unnecessarily prolong this already lengthy litigation" and instead granting only "a short stay").

---

[2] One additional case cited *Allied-Signal* but did not apply it, instead concluding without explanation that "the principles discussed in *SKF-USA* support a remand without vacatur." *Del. Riverkeeper Network v. U.S. EPA*, No. 20-cv-3412, 2021 WL 3476173, at *4 (E.D. Pa. Aug. 6, 2021). As noted above, *SKF* did not discuss vacatur, making *Delaware Riverkeeper*'s reasoning opaque at best. In any event, because *Delaware Riverkeeper* did not apply the analysis required by the Ninth Circuit, *see Pollinator Stewardship Council*, 806 F.3d at 532; *Cal. Cmtys. Against Toxics*, 688 F.3d at 992; *AquAlliance*, 312 F. Supp. 3d at 882, it is inapplicable here.

1   *Second*, for similar reasons, Defendants' proposed motion is unlikely to prevail. As noted, in the

2   Ninth Circuit, remand is granted only in "rare circumstances," *Humane Soc'y*, 626 F.3d at 1054 n.7; *see*

3   *also Pollinator Stewardship Council*, 806 F.3d at 532 ("We order remand without vacatur only in

4   'limited circumstances.'" (quoting *Cal. Cmtys. Against Toxics*, 688 F.3d at 994). "Vacatur is the

5   standard remedy for violation of the APA." *California v. U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d

6   1106, 1125 (N.D. Cal. 2017).

7   As *NRDC* illustrates, the impossibility of evaluating the first *Allied-Signal* factor—the

8   seriousness of the challenged rule's deficiencies—puts this case outside those rare circumstances. Even

9   if Defendants could overcome that hurdle, they would need to show that none of the flaws Plaintiffs

10   identify in their summary judgment motion is serious. Given the 2020 rule's use of a cost-benefit

11   analysis that entirely omitted the benefits of the 2016 data requirements, its consistent refusal to

12   distinguish or even acknowledge the reasons for its decisions in 2016, its failure to consider and respond

13   to comments, its flouting of the statutory requirement to collect demographic information, and its plain

14   misstatements of the 2016 rule and the evidence in the administrative record, it is hard to see how

15   Defendants could make that showing. *See* Pls.' Mot. for Summ. J. at 20-30. Indeed, the very fact that

16   Defendants expect to revise the data collection requirements in their proposed rulemaking makes it clear

17   that there is "little or no prospect of the rule's being readopted upon the basis of a more adequate

18   explanation of the agency's reasoning," making vacatur appropriate. *Ill. Pub. Telecom. Ass'n v. FCC*,

19   123 F.3d 693, 693 (D.C. Cir. 1997) (Ginsburg, J.).

20   Even if Defendants could somehow show that there were no serious deficiencies in the

21   challenged rule, it is unlikely that they could satisfy the second *Allied-Signal* requirement, that of

22   showing sufficiently "disruptive consequences." *Pollinator Stewardship Council*, 806 F.3d at 532;

23   *accord, e.g.*, *AquAlliance*, 312 F. Supp. 3d at 882 (requiring "serious and irremediable harms that

24   significantly outweigh the magnitude of the agency's error" (internal quotation omitted)). The Ninth

25   Circuit has remanded without vacatur only in cases involving potential "disruptive consequences" as

26   severe as "the extinction of an already endangered species" or "rolling blackouts affecting thousands, if

27   not millions of people." *California*, 277 F. Supp. 3d at 1126 (citing *Idaho Farm Bureau Fed. v. Babbitt*,

28   58 F.3d 1392, 1405-06 (9th Cir. 1995), and *Cal. Cmtys. Against Toxics*, 688 F.3d at 994); *see also*

1   *AquAlliance*, 312 F. Sup. 3d at 882 (explaining that the "limited circumstances" referred to by the Ninth

2   Circuit are "serious irreparable environmental, or possibly other forms of significant harm to the public

3   interest"). All the cases cited by Defendants where courts declined to vacate a rule after analyzing the

4   issue involved such severe disruption. *See Cal. Cmtys. Against Toxics*, 688 F.3d at 994 (forgoing vacatur

5   to "sav[e] the power supply," because vacatur could "result[] in blackouts" that would increase air

6   pollution, "the very danger the Clean Air Act aims to prevent"); *Neighbors Against Bison Slaughter v.*

7   *Nat'l Park Serv.*, No. 19-cv-128, 2021 WL 717094, at *4 (D. Mont. Feb. 4, 2021) (forgoing vacatur

8   where that relief would be "extremely disruptive to vital bison management practices" and "leave the

9   affected parties without any operative bison management plan in place," and the court had already held

10  Plaintiffs' alleged harms "too attenuated for … equitable relief"); *Cottonwood Envtl. Law Ctr. v.*

11  *Bernhardt*, No. 18-cv-12, 2020 U.S. Dist. LEXIS 233429 (D. Mont. Dec. 10, 2020) (same).

12      This case does not involve any such disruptive consequences. At most, Defendants might argue

13  that states will need to expend money to comply with the reinstated data collection requirements. But the

14  argument that "vacatur would require regulated entities to spend [money] … to achieve compliance"

15  does not suffice, even when the price tag reaches over a hundred million dollars. *California*, 277 F.

16  Supp. 3d at 1126. Moreover, given that the entire premise of Defendants' motion is that they intend to

17  reconsider the 2020 rule and reinstate some or all of the 2016 requirements, many if not all of these costs

18  will ultimately be incurred no matter what, and thus it is not *vacatur* that would cause them. And to the

19  extent that Defendants argue that suddenly reimposing the 2016 requirements would be disruptive, this

20  Court has equitable discretion to take such consequences into account in resetting the compliance

21  deadline that existed before the invalid 2020 rule, which has passed and will therefore need to be reset.

22  *See, e.g.*, *Am. Acad. of Pediatrics v. FDA*, 399 F. Supp. 3d 479, 483-87 (D. Md. 2019) (resetting lapsed

23  deadline after vacating agency action that had altered that deadline); *California v. Bernhardt*, 472 F.

24  Supp. 3d 573, 631 (N.D. Cal. 2020) ("The fact that vacatur may not lead to 'immediate compliance'

25  with the 2016 Rule does not warrant a remand without vacatur.").

26      *Third*, allowing Defendants to evade summary judgment without vacating the 2020 rule would

27  let them "'have it both ways,' by being permitted to operate under the challenged [rule] while

28  maintaining that all litigation regarding [that rule] should cease." *NRDC*, 2007 WL 14283, at *12. That

result is particularly inappropriate given how long the Defendants have already taken in this matter. As recounted in the Complaint and summary judgment motion, the 2016 rule took *13 years* to come to fruition. *See* Compl. ¶¶ 93-113; Pls.' Mot. for Summ. J. at 7-8. Even the 2020 rule took more than two years to finalize. *See* Compl. ¶¶ 142, 178; Pls.' Mot. for Summ. J. at 11-15. However committed Defendants may be to revisiting the 2020 rule, a new rulemaking would take a significant amount of time—and there is no certainty what changes a final rule would bring, given that the APA prohibits Defendants from prejudging the rulemaking process. This is not a case where an agency adjudicator can simply reconsider a ruling, but one where the agency would need to embark on a full-blown notice-and-comment rulemaking.[3] Moreover, whatever requirements Defendants finally impose, it may take years after that for states to comply. All the while, the challenged rule would remain in effect unless vacated by this Court.

Courts routinely proceed with summary judgment proceedings even where agencies are much farther along in their efforts to revise a challenged rule. *See, e.g.*, *AAP v. FDA*, 379 F. Supp. 3d 461, 469 (D. Md. 2019) (reconsidering prior order denying cross-motions for summary judgment due to issuance of draft guidance to replace the challenged guidance, because "Defendants do not state, even generally, when the draft guidance will be finalized"); *California*, 277 F. Supp. 3d at 1112 (granting summary judgment to plaintiffs even though a proposed rule was already "under review by the Office of Information and Regulatory Affairs in the Office of Management and Budget").

The result of granting Defendants' motion would be particularly inequitable here. Plaintiffs—sovereign Indian tribes and organizations that have members who are in foster care, serve youth in foster care, and/or serve youth who have experienced sex or labor trafficking—will be denied crucial data for years to come, data that would help them improve the living conditions of youth in child welfare

---

[3] Defendants' submission makes clear how far Defendants are from completing this process: they have not even received "clearance from agency leadership" to "work to issue a notice of proposed rulemaking and seek comment regarding a rule." Defs.' Stmt., *supra* p. 2. Moreover, it appears that they do not even intend to seek to reinstate the unlawfully canceled Indian Child Welfare Act AFCARS collection, but rather seek some other, unspecified "separate" information under other authorities. *Id.* It is not clear how or whether this would reverse the unlawful evisceration of the 2016 AFCARS rule, let alone provide tribes with the data required by the 2016 rule and necessary to protect their children and enforce their sovereign and statutory rights. *See* Pls.' Mot. for Summ. J. at 18-19; Pls.' Mot. Ex. A ¶¶ 14-22, Ex. B ¶¶ 8-19, Ex. C ¶¶ 9, 12, 15-16, 19-21.

systems and reduce the chance they will end up homeless, incarcerated, or otherwise severely harmed while in care. *See* Pls.' Mot. for Summ. J. at 2, 18-19; Pls.' Mot. Ex. A-E. By Defendants' own findings, this data will help "assess[] the current state of foster care and adoption," "[d]evelop appropriate national policies with respect to adoption and foster care," and "[a]ddress the unique needs of Indian children as defined by ICWA in foster care or who exit to adoption, and their families." Adoption and Foster Care Analysis and Reporting System, 81 Fed. Reg. 90, 524, 90,525 (Dec. 14, 2016). This critical data has already been withheld for years, to the detriment of Plaintiffs—and, more importantly, to the detriment of LGBTQ+, American Indian, and Alaska Native youth. *See* Compl. ¶¶ 72-91 (explaining the disproportionate involvement of these groups in the foster care system and their disproportionately negative experiences in that system); Pls.' Mot. for Summ. J. at 3-4 (same). It would be unjust to prolong this harm for an extended rulemaking that Defendants have not even begun. *See Pollinator Stewardship Council*, 806 F.3d at 532 ("We leave an invalid rule in place only 'when equity demands' that we do so." (internal quotation omitted)).

*Fourth*, the substantial amount of time Plaintiffs have waited for the data and for resolution of this suit counsels against delaying the resolution of their motion. Plaintiffs fought for years to get this data collected. This culminated in the 2016 rulemaking, which originally had an implementation window of two fiscal years. Five years later, the data is *still* years away.

Plaintiffs were prepared to file their motion on February 15, 2021, *see* Scheduling Order, ECF No. 55, and deferred that motion three months at Defendants' request so the parties could pursue settlement negotiations. Plaintiffs then agreed to defer Defendants' response another three months in hopes of reaching agreement. While Plaintiffs appreciate Defendants' avowed intention to consider reversing course from the unlawful 2020 rule, any purported benefits from briefing Defendants' motion for remand without vacatur in isolation are outweighed by the harm to Plaintiffs in deferring resolution of the pending summary judgment motion—and deferring the date they might finally receive this crucial data.

Accordingly, Plaintiffs respectfully propose that Defendants' motion for voluntary remand be consolidated with their opposition to Plaintiffs' motion for summary judgment. The resulting schedule would be as follows:

- September 15, 2021: Defendants' combined opposition to Plaintiffs' motion for summary judgment and cross-motion for voluntary remand

- September 29, 2021: Plaintiffs' combined reply in support of their motion and opposition to Defendants' cross-motion

- October 13, 2021: Defendants' reply in support of their cross-motion

- November 5, 2021: Hearing on the cross-motions[4]

Of course, to the extent that Defendants move for voluntary remand *with* vacatur, or the Court grants Defendants' request for remand but denies their request that it be without vacatur, Plaintiffs would have no objection. *See, e.g.*, *Calli C v. Saul*, No. 19-cv-248, 2021 WL 1165924, at *1 (D. Ida. Mar. 26, 2021) (granting government's motion to remand *with* vacatur); *Ctr. for Native Ecosystems*, 795 F. Supp. 2d at 1241-42 (same); *ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1064-65 (C.D. Cal. 2016) (remanding with vacatur where government had moved for remand without vacatur).


Dated: September 3, 2021                     Respectfully submitted,

                                             By:  /s/ Jeffrey B. Dubner
                                             Jeffrey B. Dubner (DC Bar No. 1013399)
                                             (admitted *pro hac vice*)
                                             Kristen Miller (D.C. Bar. No. 229627)
                                             (admitted *pro hac vice*)
                                             Sean A. Lev (D.C. Bar. No. 449936)
                                             (admitted *pro hac vice*)
                                             Democracy Forward Foundation
                                             P.O. Box 34553
                                             Washington, DC 20043
                                             jdubner@democracyforward.org
                                             kmiller@democracyforward.org
                                             slev@democracyforward.org
                                             Telephone: (202) 448-9090


                                             Jennifer C. Pizer (CA Bar. No. 152327)
                                             Lambda Legal Defense and Education Fund
                                             4221 Wilshire Blvd., Suite 280
                                             Los Angeles, CA 90010
                                             (213) 590-5903
                                             jpizer@lambdalegal.org

---

[4] Plaintiffs take no position on Defendants' request for a two-week extension in the event that the Court denies their request to stay briefing altogether.

M. Currey Cook (NY Bar No. 4612834)
(admitted *pro hac vice*)
Lambda Legal Defense and Education Fund
120 Wall St., 19th Fl.
New York, New York 10005
ccook@lambdalegal.org
Telephone: (212) 809-8585

Sasha Buchert (Oregon Bar No. 070686)
(admitted *pro hac vice*)
Lambda Legal Defense and Education Fund
1776 K Street, N.W., 8th Floor
Washington, DC 20006-2304
Sbuchert@lambdalegal.org
Telephone: (202) 804-6245

Kathryn E. Fort (MI Bar No. 69451)
(admitted *pro hac vice*)
Michigan State University College of Law
Indian Law Clinic
648 N. Shaw Lane
East Lansing, M.I. 48824
fort@msu.edu
Telephone: (517) 432-6992

*Attorneys for Plaintiffs*

DATED:  September 3, 2021          Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

/s/ *Emmet P. Ong*
EMMET P. ONG
Assistant United States Attorney

*Attorneys for Defendants*