STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney
MICHELLE LO (NYBN 4325163)
Chief, Civil Division
EMMET P. ONG (NYBN 4581369)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612-5217
    Telephone: (510) 637-39293929
    Facsimile: (510) 637-3724
    E-mail: emmet.ong@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CALIFORNIA TRIBAL FAMILIES COALITION *et al.*,   ) | Civil Action No. 3:20-cv-06018-MMC (LB) |
|        ) | |
|     Plaintiffs,  ) | **DEFENDANTS' MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR** |
|        ) | |
|   v.  ) | |
|        ) | Hearing date: December 3, 2021 |
| XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services *et al.*,  ) | Time: 9:00 a.m. |
|        ) | |
|     Defendants.  ) | |

1

## NOTICE OF MOTION

2    PLEASE TAKE NOTICE that on December 3, 2021 at 9:00 a.m., or as soon thereafter as this

3  matter may be heard by the Honorable Maxine M. Chesney, Senior United States District Judge of the

4  United States District Court for the Northern District of California, located at 450 Golden Gate Avenue,

5  San Francisco, California, Defendants[1] will and hereby do move the Court for an order remanding the

6  final rule that is the subject of Plaintiffs'[2] complaint ("Complaint"), Dkt. No. 1, without vacatur.  This

7  motion is based on this notice, the supporting memorandum of points and authorities set forth below, all

8  pleadings and papers on file with the Court, and all other matters properly before this Court.

9

## RELIEF SOUGHT

10    Defendants seek an order remanding the final rule issued on May 12, 2020 related to the

11  Adoption and Foster Care Analysis and Reporting System (85 Fed. Reg. 28,410) without vacatur.

12

## MEMORANDUM OF POINTS AND AUTHORITIES

13  **I.    INTRODUCTION**

14    In May 2020, the U.S. Department of Health and Human Services ("HHS") issued a final rule

15  regarding the Adoption and Foster Care Analysis and Reporting System ("AFCARS"), a data collection

16  system for national adoption and foster care data.  The 2020 final rule removed the requirement in the

17  2016 AFCARS rule that state and tribal child welfare agencies collect and submit data related to sexual

18  orientation and the Indian Child Welfare Act of 1978 ("ICWA").  Plaintiffs have brought suit alleging

19  that HHS's decision to remove these elements violates the Administrative Procedure Act and requesting

20  that the 2020 final rule be set aside.  However, HHS now wishes to reconsider its decision regarding the

21  sexual orientation and ICWA-related data in light of a change in administration and the attendant change

22  in policies.  To the end, Defendants are requesting, without confessing error, that the Court remand the

23

24    [1] Defendants are Xavier Becerra, in his official capacity as Secretary of Health and Human

25  Services; JooYeun Chang, in her official capacity as Acting Assistant Secretary and Principal Deputy
    Assistant Secretary at the Administration for Children and Families; U.S. Department of Health and

26  Human Services; and Administration for Children and Families.  Pursuant to Federal Rule of Civil
    Procedure 25(d), Mr. Becerra and Ms. Chang are automatically substituted for Alex Azar and Lynn A.

27  Johnson, respectively.

28    [2] Plaintiffs are California Tribal Families Coalition, Yurok Tribe, Cherokee Nation, Facing
    Foster Care in Alaska, Ark of Freedom Alliance, Ruth Ellis Center, and True Colors, Inc.

1   2020 AFCARS final rule without vacatur.  That request should be granted.

2       On remand, HHS intends to initiate a rulemaking process that would propose to collect the

3   sexual orientation and ICWA-related data that are the subject of Plaintiffs' Complaint.  Work has

4   already begun to obtain the necessary departmental clearance from agency leadership to move forward

5   with the rulemaking process.  Given HHS's good faith intention to address the issues raised by

6   Plaintiffs, remand should be granted.  In addition, remand should be without vacatur.  HHS's intention to

7   revisit the challenged action in a manner that could address Plaintiffs' concerns means that any alleged

8   errors with the 2020 final rule are not sufficiently serious to warrant vacatur.  Moreover, vacating the rule

9   would result in enormous disruption to HHS and child welfare agencies across the country, while keeping the

10  rule in place would result in little tangible prejudice to Plaintiffs.

11      Accordingly, the Court should remand the 2020 final AFCARS rule without vacatur.

12  **II.     STATEMENT OF ISSUES TO BE DECIDED**

13      Whether the AFCARS final rule issued on May 12, 2020 (85 Fed. Reg. 28,410) should be

14  remanded without vacatur.

15  **III.    BACKGROUND**

16      AFCARS is a data collection system for national adoption and foster care data authorized under

17  section 479 of the Social Security Act ("Act"), codified at 42 U.S.C. § 679.  *Id.*  Section 679(c) requires

18  AFCARS to:

19      (1) avoid unnecessary diversion of resources from agencies responsible for adoption and
        foster care; (2) assure that data collected is reliable and consistent over time and among
20      jurisdictions through the use of uniform definitions and methodologies; (3) provide
        comprehensive national information with respect to — the demographic characteristics of
21      adoptive and foster children and their biological and adoptive or foster parents . . . ; and (4)
        utilize appropriate requirements and incentives to ensure that the system functions reliably.
22

23      The data for AFCARS are collected and reported by state and tribal child welfare agencies,

24  which are known as "Title IV-E agencies" because they receive funding under Title IV-E of the Act (as

25  well as Title IV-B).  As Plaintiffs acknowledge, Title IV-E agencies are the principal recipients of the

26  nearly $10 billion per year that the federal government spends on child welfare programs.  Compl. ¶ 54.

27  Section 474(f) of the Act requires HHS to impose penalties on all Title IV-E agencies (i.e., both states

28  and tribes) for failing to submit the data required by AFCARS.  *See also* 45 C.F.R. § 1355.47.  Section

1   1102 of the Act instructs the Secretary of HHS to promulgate regulations necessary for the effective

2   administration of the functions for which HHS is responsible under the Act.

3           On February 24, 2017, President Trump issued Executive Order 13777, which directed federal

4   agencies to establish task forces to make recommendations regarding their repeal, replacement, or

5   modification of existing regulations to lower regulatory burdens on the American people.  The HHS task

6   force identified the AFCARS final rule published on December 14, 2016 ("2016 Final Rule") as one in

7   which the reporting burden may impose costs that exceed benefits.  81 Fed. Reg. 90,524.  The 2016

8   Final Rule updated AFCARS to add 153 data elements to the original 119 data elements, bringing to 272

9   the total number of data elements that state and tribal child welfare agencies would be required to report

10  to HHS.  Ex. A, Declaration of Joseph Kracke-Bock ("Bock Decl.") ¶ 6.

11          On March 15, 2018, Defendants published an Advance Notice of Proposed Rulemaking,

12  soliciting comments on the data elements added to AFCARS by the 2016 Final Rule and their associated

13  burden.  83 Fed. Reg. 11,449.  Based on the feedback received by HHS, and its review of the need for

14  and utility of the data elements, HHS initiated a rulemaking process that resulted in the promulgation of

15  a AFCARS final rule on May 12, 2020 ("2020 Final Rule").  85 Fed. Reg. 28,410.  The 2020 Final Rule

16  excluded approximately one-third of the data elements from the 2016 Final Rule (from 272 to 183),

17  which was still a net increase of 64 data elements from the AFCARS regulations, issued in 1993, that

18  existed prior to the 2016 Final Rule.  Bock Decl. ¶ 9.

19          Among the data elements removed by the 2020 Final Rule were data elements asking for

20  information on the sexual orientation of the child, foster parent, adoptive parent, or legal guardian, and

21  data elements related to ICWA.  85 Fed. Reg. at 28,413.  HHS maintained the data element added by the

22  2016 Final Rule that asked whether conflict related to a child's sexual orientation or gender identity

23  contributed to the child's removal from home as well certain data elements specifically focused on the

24  needs of Indian children.  *Id.* at 28,412-13, 28,429.  The 2020 Final Rule also removed, streamlined or

25  simplified data elements covering the child's relationship to foster/adoptive parents and legal guardians,

26  the child's financial and medical assistance, health assessment date and time, educational stability,

27  authority for placement and care responsibility, private agency living arrangement, juvenile justice

28  involvement, transition plan and date, and interjurisdictional adoption or guardianship jurisdiction.  *See*

1   *generally id.* at 28,410.  Title IV-E agencies are required to comply with the 2020 Final Rule by

2   October 1, 2022.  *Id.* at 28,413.  Because the 2016 Final Rule was never implemented, HHS and Title

3   IV-E agencies still operate under the AFCARS regulations that were issued in 1993.  Bock Decl. ¶ 8.

4       Plaintiffs are two Indian tribes and five nonprofits.  *See* Compl. ¶¶ 18-47.  Several of the

5   nonprofits focus on tribal interests, while others serve LGBTQ+ children.  *Id.*  Plaintiffs are challenging

6   HHS's decision in the 2020 Final Rule to remove certain ICWA-related and sexual orientation elements

7   added by the 2016 Final Rule, alleging that Defendants' actions were arbitrary, capricious and not in

8   accordance with law, in violation of Section 706(2)(A) of the Administrative Procedure Act.  *See id.*

9   ¶¶ 248-251.

10  **IV.    ARGUMENT**

11      **A.    The Court Should Grant Defendants' Request to Remand the 2020 Final Rule**

12      Agencies have inherent authority to reconsider past decisions and to revise, replace, or repeal a

13  decision to the extent permitted by law and supported by a reasoned explanation.  *FCC v. Fox Television*

14  *Stations, Inc.*, 556 U.S. 502, 515 (2009); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto.*

15  *Ins. Co.*, 463 U.S. 29, 42 (1983) ("[R]egulatory agencies do not establish rules of conduct to last forever

16  [and] an agency must be given ample latitude to adapt their rules and policies to . . . changing

17  circumstances.") (internal citations and quotation marks omitted)); *Nat'l Ass'n of Home Builders v. EPA*,

18  682 F.3d 1032, 1038, 1043 (D.C. Cir. 2012) (explaining that an agency's "reevaluation of which policy

19  would be better in light of the facts" is "well within" its discretion and that a "change in administration .

20  . . is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its

21  programs and regulations." (citations and internal quotation marks omitted)).

22      Allowing for voluntary remand is consistent with this principle.  *See Ethyl Corp. v. Browner*, 989

23  F.2d 522, 524 (D.C. Cir. 1993).  "[W]hen an agency action is reviewed by the courts, in general the

24  agency may take one of five positions," including that the agency may request "a remand (without

25  confessing error) in order to reconsider its previous position."  *SKF USA Inc. v. United States*, 254 F.3d

26  1022, 1027–28, 1029 (Fed. Cir. 2001); *see also Cal. Cmtys. Against Toxics v. EPA (CCAT)*, 688 F.3d

27  989, 992 (9th Cir. 2012) ("A federal agency may request remand in order to reconsider its initial action."

28  (citing *SKF*, 254 F.3d at 1029)).  An agency may seek remand because, for example, "it wishe[s] to

1   consider further the governing statute, or the procedures that were followed." *SKF*, 254 F.3d at 1029. "It

2   might simply state that it had doubts about the correctness of its decision or that decision's relationship

3   to the agency's other policies." *Id.* "Here, the reviewing court has discretion over whether to remand."

4   *Id.* (citations omitted).

5        "Generally, courts only refuse voluntarily requested remand when the agency's request is

6   frivolous or made in bad faith." *CCAT*, 688 F.3d at 992 (citing *SKF*, 254 F.3d at 1029).  But "if the

7   agency's concern is substantial and legitimate, a remand is usually appropriate." *SKF*, 254 F.3d at 1029.

8   As courts have recognized, "administrative reconsideration is a more expeditious and efficient means of

9   achieving an adjustment of agency policy than is resort to the federal courts." *B.J. Alan Co. v. ICC*, 897

10  F.2d 561, 562 n.1 (D.C. Cir. 1990) (citation omitted).  For this reason, while recognizing that an agency

11  need not confess error in seeking remand, one court of appeals has held that, in the absence of a tenable

12  reason to the contrary, "it is an abuse of discretion to prevent an agency from acting to cure the very

13  legal defects asserted by plaintiffs challenging federal action." *Citizens Against the Pellissippi Parkway*

14  *v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004).   Accordingly, "courts routinely grant agency requests for

15  voluntary remand to reconsider an initial determination." *ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d

16  1059, 1063 (C.D. Cal. 2016) (*citing Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 275 F.Supp.2d

17  1136, 1141 (C.D. Cal. 2002)); *see also Limnia, Inc. v. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir.

18  2017) (explaining that remand should be granted so long as "the agency intends to take further action

19  with respect to the original agency decision on review").

20       Here, HHS is requesting remand of the 2020 Final Rule so that it can reconsider its previous

21  position regarding the collection of the sexual orientation and ICWA data elements.  Ex. B, Declaration

22  of Aysha Schomburg ("Schomburg Decl.") ¶ 4.  On remand, HHS intends to issue one or more notice(s)

23  of proposed rulemaking ("NPRM") and seek comment regarding one or more rules that would propose

24  to collect the sexual orientation and ICWA-related data that were in the version of the 2016 Final Rule

25  and removed by the 2020 Final Rule.  *Id.* ¶ 8.  Work has already begun to obtain the necessary

26  departmental clearance from agency leadership to move forward with the rulemaking process.  *Id.*

27       Remand in this case is consistent with HHS's inherent authority to reconsider the 2020 Final

28  Rule, including reappraisal of the costs and benefits that went into shaping that rule, particularly in light

of the change of administration and attendant change in policy priorities.  Exec. Order No. 13988, 86

Fed. Reg. 7,023 (Jan. 20, 2021) (Preventing and Combating Discrimination on the Basis of Gender

Identity or Sexual Orientation); Exec. Order No. 13985, 86 Fed. Reg. 7,009 (Jan. 20, 2021) (Advancing

Racial Equity and Support for Underserved Communities Through the Federal Government); *see also*

Exec. Order No. 13992, 86 Fed. Reg. 7,049 (Jan. 20, 2021) (revoking Exec. Order No. 13777).

Granting remand to allow Defendants to revisit the 2020 Final Rule also promotes judicial

economy and conserves the parties' and the courts' resources.  *See B.J. Alan Co.*, 897 F.2d at 562 n.1

(recognizing the efficiency of administrative reconsideration to modify agency policy as compared to

judicial review).  Plaintiffs are focused on the removal of the sexual orientation and ICWA-related data,

which Defendants now intend to propose to collect under AFCARS or another legal authority (sections

471(a)(6) and 476(a)(2) of the Act).  Defendants' reconsideration of the 2020 Final Rule directly

addresses Plaintiffs' concerns and if, as intended, HHS issues one or more new NPRMs that proposes to

collect this data, it would address any purported deficiencies that are the subject of Plaintiffs' challenge.

In addition, continuing to litigate this case would interfere with Defendants' ongoing reconsideration

process by forcing HHS to structure its administrative process around pending litigation, rather than its

policy priorities and expertise.  *See Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 43 (D.D.C.

2013) (noting that because agency did "not wish to defend" action, "forcing it to litigate the merits

would needlessly waste not only the agency's resources but also time that could instead be spent

correcting the rule's [alleged] deficiencies"), *aff'd*, 601 F. App'x 1 (D.C. Cir. 2015).

Additionally, Defendants' request for voluntary remand here is timely and made in good faith.

On February 9, 2021, Defendants notified the Court and Plaintiffs that it was reevaluating the 2020 Final

Rule and considering the collection of the data that are the subject of Plaintiffs' challenge.  Dkt. No. 56.

In March 2021, Defendants, through counsel, notified Plaintiffs of their intention to file a motion for

voluntary remand without vacatur.  Over the next several months, the parties attempted to negotiate a

resolution to the case.  To accommodate these negotiations, the parties jointly sought and received

extensions to the summary judgment schedule.   Dkt. Nos. 59, 62, 81, 89.  In August 2021, Plaintiffs,

through counsel, notified Defendants that they wished to resume the summary judgment schedule while

negotiations continued.  On September 3, 2021, Defendants notified the Court that Defendants intended

1  to proceed with a motion for voluntary remand without vacatur and requested that the Court stay the

2  summary judgment briefing schedule pending resolution of the remand motion.  Dkt. No. 96.

3       Because Defendants have demonstrated a good faith intent to reconsider the 2020 Final Rule,

4  and to do so in a way that would directly address the issues raised by Plaintiffs' challenge, remand is

5  appropriate here and would promote judicial economy and conserve the parties' resources.  Furthermore,

6  Plaintiffs agree that the 2020 Final Rule should be remanded.  Dkt. No. 96 at 5:22-23.

7      **B.    The Court Should Not Vacate the 2020 Final Rule**

8      The 2020 Final Rule should be remanded without vacatur.  "Whether agency action should be

9  vacated depends on how serious the agency's errors are 'and the disruptive consequences of an interim

10  change that may itself be changed.'"  *CCAT*, 688 F.3d at 992 (quoting *Allied-Signal, Inc. v. U.S. Nuclear*

11  *Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).  "A flawed rule need not be vacated.

12  Indeed, when equity demands, a regulation can be left in place while the agency follows the necessary

13  procedures to correct its action."  *Id.* at 991.

14      "The first *Allied-Signal* factor deals with the likelihood that a rule's deficiencies can be redressed

15  on remand . . . ."  *Am. Forest Res. Council*, 946 F. Supp. 2d at 44 (citing *Black Oak Energy, LLC v.*

16  *FERC*, 725 F.3d 230, 244 (D.C. Cir. 2013)); *see also United States Sugar Corp. v. Envtl. Prot. Agency*,

17  830 F.3d 579, 630, (D.C. Cir. 2016) (characterizing factor as "likelihood of cure on remand").  As

18  discussed in Part IV.A *supra*, although Defendants do not confess error in promulgating the 2020 Final

19  Rule, and need not do so, *see* SKF, 254 F.3d at 1029, they seek remand to reconsider the 2020 Final

20  Rule in light of a change in administration and the attendant change in policies.  In doing so, Defendants

21  are initiating a rulemaking process that would propose to collect, under AFCARS or an alternate legal

22  authority, the sexual orientation and ICWA-related data that are the subject of Plaintiffs' challenge.

23  Therefore, the purported errors raised by Plaintiffs are not sufficiently serious to warrant vacatur

24  because any such errors, assuming they exist, can be addressed on remand.  *See Allied-Signal*, 988 F.2d

25  at 150-51 (finding that the deficiencies were the failure of the agency to adequately state its reasoning,

26  and thus not "serious" because the agency, on remand, might be able to easily provide the necessary

27  explanation); *Del. Riverkeeper Network v. United States EPA*, No. 20-3412, 2021 U.S. Dist. LEXIS

28  147539, at *9-11 (E.D. Pa. Aug. 6, 2021) (remanding without vacatur where agency, without confessing

1  error, sought to reconsider rule in light of a new policy resulting from a change in administration and

2  engage in a rulemaking process expected to take two years).

3      Two recent Ninth Circuit orders indicate that remand without vacatur should be routinely granted

4  where, as the case is here, the agency intends to revisit the challenged action to address the plaintiffs'

5  concerns.  *See Neighbors for Envtl. Justice v. EPA*, Nos. 20-72091, 20-73276, 2021 U.S. App. LEXIS 20889,

6  at *4-5 (9th Cir. July 14, 2021) (granting "request for voluntary remand without vacatur to permit EPA to

7  conduct reconsideration proceedings" without analyzing *Allied Signal* factors); *Safer Chems. v. EPA*, 791 F.

8  App'x 653, 656-57 (9th Cir. 2019) ("Accepting EPA's representation that it can address Petitioners'

9  concerns, we agree with EPA that remand without vacatur is appropriate with respect to the challenged

10  provisions" and doing so without analyzing *Allied Signal* factors (citing *CCAT*, 688 F.3d at 992)).

11      Regarding the second *Allied-Signal* factor, vacatur would be extraordinarily disruptive.

12  AFCARS is a nationwide system that requires Title IV-E agencies from all 50 states and numerous

13  tribes to collect and submit data to HHS.  Bock Decl. ¶ 5.  HHS and Title IV-E agencies have been

14  working on implementing the 2020 Final Rule for the last one-and-a-half years, which includes

15  developing policies, training tools, and technology systems.  *Id.* ¶ 11.  For example, HHS has procured a

16  $24.4 million contract to develop an enterprise system to receive new AFCARS data based on the 2020

17  Final Rule.  *Id.*  Vacating the 2020 Final Rule and reinstating the 2016 Final Rule would require HHS,

18  all 50 states, and tribal title IV-E agencies to modify and, in some cases, unwind that work at great

19  expense and burden.  *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (2020) ("Under our

20  precedents, a quintessential disruptive consequence arises when an agency cannot easily unravel a past

21  transaction in order to impose a new outcome.  We have rejected [such] approaches . . . as 'an invitation

22  to chaos.'" (quoting *Sugar Cane Growers v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002))).

23      For example, HHS would need to modify its enterprise system to implement the ICWA and

24  sexual orientation elements, which will require significant analysis, additional funding, potential

25  contract acquisition or modification and project plan or schedule changes, as well as additional meetings

26  with various stakeholders, including states and tribes.  Bock Decl. ¶ 11.  Title IV-E agencies would

27  likewise require new contract solicitations, amendments to existing technology contracts, and funding

28  approvals.  *Id.* ¶ 12.  Both HHS and Title IV-E agencies would also need to develop new policies and

1   training to reflect the new data elements. *Id.* ¶¶ 11-12. Any changes would also divert the attention and

2   resources of Title IV-E agencies from their current obligations, including mandated federal reporting for

3   other Title IV-B and Title IV-E programs, thereby potentially disrupting the flow of billions of dollars in

4   federal funding. *Id.* ¶ 12.

5          Vacating the 2020 Final Rule would also delay HHS from receiving updated data and

6   comprehensive historical information on key data elements included in the 2020 Final Rule. *Id.* ¶ 9.

7   Notably, the 2020 Final Rule substantially altered the data collection specified in the initial 1993

8   AFCARS rule to permit more complete reporting on all foster care entries and exits, child placements,

9   case visits, as well as reporting on prior guardianships, and whether a child has a sibling also in foster

10  care. *Id.* Thus, if the 2020 Final Rule were vacated, HHS and Title IV-E agencies would be unable to

11  collect and report this additional data by 2023, as required by the 2020 Final Rule. *Id.* ¶ 10. It would

12  not serve the interests of anyone, including the foster care population, to prevent the implementation of

13  the 2020 Final Rule, which has 64 more data elements than the 1993 regulations currently in effect. *See*

14  *CCAT*, 688 F.3d at 993-94 (finding that vacatur could stall the construction of a much needed power

15  plant and result in blackouts, thereby "necessitate[ing] the use of diesel generators that pollute the air,

16  the very danger the Clean Air Act aims to prevent"). However, if the 2020 Final Rule were to remain in

17  place while HHS reconsiders the collection of the ICWA and sexual orientation data at issue in this

18  litigation, the ICWA elements retained in the 2020 Final Rule would be available for use in descriptive

19  reports and analyses that will provide important information about outcomes for ICWA applicable

20  children and youth placed in foster care. Bock Decl. ¶ 10.

21         Reverting to the 2016 Final Rule would also be a waste of federal, state and tribal resources

22  because some data elements that were carried over from 2016 Final Rule to the 2020 Final Rule were

23  modified and thus, while similar, are not identical. *Id.* ¶ 14. For this reason, the system modifications

24  that Title IV-E agencies have already made to collect 2020 Final Rule data will not, in all cases, line up

25  to collect the corresponding data elements in the 2016 Final Rule. *Id.* Therefore, Title IV-E agencies

26  would need to implement additional system modifications to revert even partially to the 2016 Final Rule

27  and collect the ICWA and sexual orientation data elements removed from the 2020 Final Rule. *Id.*

28  Moreover, reverting to the 2016 Final Rule would entail HHS and Title IV-E agencies collecting the

1 data elements that are not the subject of Plaintiffs' challenge.  *Id.*  It is difficult to imagine anything

2 more wasteful, and contrary to the statutory admonition that AFCARS avoid unnecessary diversion of

3 resources from Title IV-E agencies, than reinstating data elements that neither side is seeking to collect.

4        Plaintiffs' allegations of harm from keeping the 2020 Final Rule in place are too speculative and

5 amorphous to outweigh the disruptive consequences of vacatur.  For example, Plaintiffs assert that not

6 having the data elements forces them to divert resources to address harms to their mission-driven

7 activities and impairs their ability to obtain funding.  Compl. ¶ 209.  But Plaintiffs do not attempt to

8 quantify these amounts or how they compare to the costs that would be incurred by HHS and Title IV-E

9 agencies in reverting back to the 2016 Final Rule.  *See Neighbors Against Bison Slaughter v. Nat'l Park*

10 *Serv.*, No. CV 19-128-BLG-SPW, 2021 U.S. Dist. LEXIS 22584, at *6-11 (D. Mont. Feb. 4, 2021)

11 (remanding without vacatur where agencies, without confessing error, sought to reconsider bison

12 management plan because harm alleged was too attenuated and loss of monetary value to local business

13 did not outweigh disruption of collaborative bison management goals and would result in confusion

14 about the management framework for bison); *Am. Forest Res. Council*, 946 F. Supp. 2d at 43-44

15 (finding the "administrative and economic costs of remand without vacatur are too abstract and

16 speculative to clearly outweigh its benefits" where plaintiff "ha[d] not attempted to quantify these costs .

17 . . [or] provided any concrete examples of projects impacted by the consultation requirement or

18 additional timber that could be harvested in the next three years if the rule were vacated").  Nor do

19 Plaintiffs assert that they cannot continue their advocacy efforts without this data.

20        To paraphrase the Ninth Circuit, "if saving a snail warrants judicial restraint," then it is surely the

21 case that the Court should exercise restraint with respect to the 2020 Final Rule, which impacts not only

22 HHS but child welfare agencies in all 50 states as well as numerous tribes.  *CCAT*, 688 F.3d at 994

23 (citing *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405-06 (9th Cir. 1995)).  Because HHS

24 would reconsider the alleged errors on remand, and the significant disruptive consequences of vacatur

25 outweigh any prejudice to Plaintiffs, the 2020 Final Rule should be remanded without vacatur.

## V.  CONCLUSION

27        For all the foregoing reasons, the Court should grant Defendants' motion for voluntary remand

28 without vacatur.

DATED:  October 15, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

*/s/ Emmet P. Ong*
EMMET P. ONG
Assistant United States Attorney

*Attorneys for Defendants*